Ronald W. **RUSSELL**, Petitioner,

v.

**COLORADO DIVISION OF EMPLOYMENT, State Compensation Insurance Authority, and the Industrial Claim Appeals Office of the State of Colorado, Respondents.**

No. 88CA0866.

Colorado Court of Appeals,
Div. IV.

Aug. 24, 1989.

Rehearing Denied Oct. 5, 1989.

Certiorari Denied Jan. 29, 1990.

Steven U. Mullens, P.C., Steven U. Mullens and James A. May, Pueblo, for petitioner.

Anderson, Campbell and Laugesen, P.C., Michael W. Sutherland, Denver, for respon-

**484**

dents Colorado Div. of Employment and State Compensation Ins. Authority.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Aurora Ruiz–Hernandez, Asst. Atty. Gen., Denver, for respondents Industrial Claim Appeals Office of the State of Colo.

Opinion by Judge JONES.

In this workmen's compensation case, the question before the Industrial Claim Appeals Office (Panel) was whether the average weekly wage for Ronald W. Russell (claimant) should include amounts contributed by his employer for life insurance, health insurance, and his non-vested retirement benefits. The Panel concluded that the non-vested contribution to a retirement fund could not be included but that the other contributions were proper. In his petition for review, claimant contends that he is entitled to have the employer's contributions to the Public Employees Retirement Association (PERA) included in the computation of his average weekly wage. We affirm the Panel's order.

It is undisputed that claimant's injury is compensable and that it left him permanently and totally disabled. And, on review, the employer and insurer do not contest the inclusion of life and health insurance benefits in the computation of the average weekly wage. The parties dispute, however, whether the employer's contributions to PERA on behalf of claimant should be included in the computation of claimant's average weekly wage.

The Panel concluded that such contributions could not be included in the average weekly wage. It reasoned that since claimant had worked less than five years, he had no vested interest in the employer's contribution to PERA and, consequently, that such contribution had no value at the time of claimant's injury.

We disagree with claimant's contention that the employer's PERA contribution should be included in the calculation of his average weekly wage.

Section 8–47–101(2), C.R.S. (1986 Repl. Vol. 3B) provides that "wage" as used in the term "average weekly wage" includes the reasonable value of board, rent, housing, lodging, or any other similar advantages received from the employer.

Although we cannot determine from the record whether the employer's PERA contributions were discontinued during claimant's temporary disability, we nonetheless agree with the Panel that since claimant's entitlement to the employer's contribution to PERA had not vested, see § 24–51–101(51), C.R.S. (1988 Repl.Vol. 10B), the contribution had no reasonable monetary value, and claimant has no reasonable expectation of receiving the benefits of such contribution, as he would with "advantages" determined to be a part of "wages."

Other jurisdictions have considered the issue whether the employer contribution to a pension plan, either derived from collective bargaining or statutory, as here, constitutes wages for purposes of determining average weekly wage. Invariably, the courts of those states have determined that such benefits are not wages.

In Florida, this determination was made on the basis that the employer's contribution:

"could [not] be regarded as [wages because] they had [no] real present-day value to claimant, that is, he was [not] free to withdraw funds at will [and] that vesting was [not] assured."

*Sunland Training Center v. Irving*, 384 So.2d 745 (Fla.Dist.Ct.App.1980). *See Jackson v. Alachua County School Board*, 389 So.2d 1244 (Fla.Dist.Ct.App. 1980); *Florida Dept. of Transportation v. London*, 380 So.2d 554 (Fla.Dist.Ct.App. 1980) (no evidence that such benefits had vested, and that they were of any present-day real economic value).

The Oregon Supreme Court reached a similar result, concluding that the employer's contributions to a state pension fund are not "received" by the employee and, therefore, cannot be considered in the formula for average weekly wage. The court based this decision upon the fact that the employee is not eligible to receive any pen-

sion funds until vested in the plan, and then retired or terminated. *Nelson v. SAIF*, 302 Or. 463, 731 P.2d 429 (1987).

In *Morrison–Knudsen Construction Co. v. Director, Workers' Compensation Programs*, 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983), the United States Supreme Court, construing language similar to that in § 8–47–101(2), C.R.S. (1986 Repl. Vol. 3B), held that employer contributions to union trust funds for pensions are not wages for purposes of compensation benefits. The court reasoned that:

> "Board, rent, housing, or lodging are benefits with a percent value that can be readily converted into a cash equivalent on the basis of their market values. The present value of these ... funds is not ... [convertible] into a cash equivalent [for purposes of compensation benefits]."

The *Morrison–Knudsen* Court went on to state that neither the employer's costs, nor the claimant's failure to have vested rights in the fund, nor the value of the claimant's expectation interest in the fund, which is speculative, can serve as a basis for determining a cash equivalent value.

We conclude that, for purposes of § 8–47–101(2), what distinguishes advantages similar to board, rent, housing, and lodging from those benefits not includable as wages is that a reasonable, present-day, cash equivalent value may be placed on the benefits which constitute wages. Additionally, the employee must have reasonable access on a day-to-day basis, either actually or potentially, to the benefit, or an immediate expectation interest in receiving the benefit under appropriate, reasonable circumstances. *See Morrison–Knudsen Construction Co. v. Director, Workers' Compensation Programs, supra; Center v. Irving, supra.*

Under the circumstances here, the employer's contribution to PERA cannot constitute an "advantage" as contemplated by § 8–47–101(2) because it may not be reasonably converted to a cash equivalent, it is not immediately available to claimant, and claimant has no expectation interest in the contribution because he has no vested rights in the pension plan. Thus, the contribution is not analogous to "board, housing, lodging, or any other similar advantages." *See Gregory v. Crown Transportation*, 776 P.2d 1163 (Colo.App.1989) (FICA tax payments are not wages under § 8–47–101(2) for purposes of calculating average weekly wage). *Cf. State Compensation Insurance Authority v. Smith*, 768 P.2d 1256 (Colo.App.1988); *Murphy v. Ampex Corp.*, 703 P.2d 632 (Colo.App.1985).

Nor are we persuaded by claimant's assertion that because the injury prevented him from working long enough to vest the employer's contribution, he should not be deprived of having the contribution included in his wage rate. The term "wages" means the money rate in force *at the time of the injury*. *See* § 8–47–101(2), C.R.S. (1986 Repl.Vol. 3B); *State Compensation Insurance Authority v. Smith, supra.*

To include benefits claimant might later have received would be tantamount to including future salary increases to which an employee might later be entitled. Neither is proper since such prospective benefits are not in force at the time of the injury. Thus, the Panel's conclusion was correct.

The order is affirmed.

REED, J., concurs.

TURSI, J., dissents.

**TURSI, Judge, dissenting.**

I respectfully dissent.

Claimant is permanently and totally disabled. At the time of his injury his compensation from the State included a base pay of $1,408 per month, plus contributions of $.88 per month for life insurance, $53.12 per month for health insurance, and $171.78 toward his retirement.

It is undisputed that once claimant's employment with the State is terminated, he has no vested right in continuing coverage or contributions toward or for life insurance, health insurance, or retirement benefits. Hence, I find the refusal to treat the employer's contribution toward a retirement plan as part of claimant's wages pursuant to the definition found in § 8–47–101(2), C.R.S. (1986 Repl.Vol. 3B) to

be irreconcilable with this court's treatment of contributions for health and life insurance.

Furthermore, the failure to include as wages that part of a compensation package intended to provide retirement security merely because the right to receive retirement benefits has not vested creates at best an anomaly and, at worst, an abomination. If the right to retirement benefits had, in fact, become vested, the very need that was to be provided for by the contribution at issue would be subsumed into the benefits being paid or payable by the eligibility or receipt of the vested disability or retirement benefit.

In *Murphy v. Ampex Corp.*, 703 P.2d 632 (Colo.App.1985), *cert. denied*, we held that the *value* of an expanded group health coverage and a supplemental life insurance coverage should be included in determining the "wages" of a workmen's compensation claimant. Since the announcement of *Murphy*, the general assembly has revisited the Workmen's Compensation Act annually, and it has not taken these occasions to restrict our interpretation of the applicable statute. Further, in *State Compensation Insurance Authority v. Smith*, 768 P.2d 1256 (Colo.App.1988), *cert. denied*, applying *Murphy*, we held, *inter alia*, that the reasonable value of health insurance at the time of the injury should be construed as part of the term "wages" under § 8–47–101(2) for purposes of temporary disability benefits. And, indeed, as in *Murphy* and *Smith*, here the employer's contribution as part of claimant's wage package was received on his behalf by the provider of the "other similar advantage." Section 8–47–101(2).

Here, the State of Colorado, claimant's employer, has voluntarily included in its wage package funding to assure future financial security to the employee for his family and himself. Accordingly, I find it unconscionable to reduce his benefits for permanent total disability by failing to include in the computation of his "wages" a sum which may be used to replace the value of that retirement protection which would have been his but for the injury which he received in the scope and course of his employment.

I would, therefore, set aside the order of the Panel and remand for computation of proper benefits based upon an analysis that includes the State's payment on behalf of a pension plan for the claimant.