Margaret **MEEKER**, Petitioner,

v.

**PROVENANT HEALTH PARTNERS; Sisters of Charity Health Care Systems, Inc.; Industrial Claim Appeals Office of the State of Colorado; and Director, Department of Labor & Employment, Division of Workers' Compensation, Respondents.**

No. 95CA0904.

Colorado Court of Appeals, Div. II.

May 30, 1996.

As Modified on Denial of Rehearing July 5, 1996.

Certiorari Denied Jan. 13, 1997.

Dwyer, Huddleson & Ray, P.C., Stephen J. Jouard, Fort Collins, for Petitioner.

Watson, Nathan & Bremer, P.C., Anne S. Myers, Karen R. Wells, Denver, for Respondent Provenant Health Partners and Sisters of Charity Health Care Systems, Inc.

No Appearance for Respondent The Industrial Claim Appeals Office or Director, Department of Labor & Employment, Division of Workers' Compensation.

Opinion by Judge CRISWELL.

The issue in this workers' compensation proceeding is whether the value of leave time credited to the employee, Margaret Meeker, during the course of her employment with Provenant Health Partners, is to be considered as "wages" under the pertinent 1992 statutory provision, Colo.Sess. Laws 1991, ch. 219, § 8–40–201(9) at 1293–1294. Based upon the parties' written stipulation of facts, an Administrative Law Judge (ALJ) concluded that such credit was required to be considered as such. The Industrial Claim Appeals Office (Panel) disagreed and modified the ALJ's order accordingly. We agree with the ALJ. Hence, we set the Panel's order aside and remand for entry of an order in accordance with this determination.

The stipulation of facts agreed to by the parties makes it apparent that the employer here had not established any program for its employees that specifically provided for any paid holidays, paid sick leave, or paid vacations. Rather, its employees were paid a cash salary, based on an hourly rate, only for the hours actually worked by them.

In lieu of any provision for paid holidays, paid sick leave, or paid vacations, however, the employer had established a benefit plan, which it referred to as "personal employee time," or "PET." Under this plan, each employee was given a credit for leave time for a specific number of hours for each pay period of two weeks. The number of hours credited to each employee was based upon the employee's length of service and ranged from a minimum of 8 to a maximum of 11.08 hours. At the time of her industrial injury, the employee here was being credited with approximately 9.5 hours for each two-week period that she worked. During each such two-week period, therefore, she was paid at the end of that pay period for the hours that she actually worked, and she received a leave credit for an additional 9.5 hours.

The hours thus credited to each employee were "deposited" into the employee's "bank," and the employee could choose to "draw" on those hours (by being paid therefor at the employee's current hourly rate) whenever the employee was absent from work. Thus, so long as the employee had hours in the bank, he or she could elect to receive pay for a holiday, for an absence because of illness, for a vacation period, or for any other work absence, including simply taking a day off.

There was no limit or cap upon the number of hours that an employee could accumulate in his or her bank. Nor does the record indicate that the employee was required to use (by being paid for absences) any of the hours in the bank. At the time of the hearing here, the employee had a credit in her bank of some 248 hours. This represented more than one year's accumulation of credits.

If upon termination of employment, the employee had elected not to use all of the hours credited to that employee's bank, then the employee was paid in full for all remaining hours, at the employee's then current hourly rate. Once the hours were earned and credited to the bank, therefore, the employee never forfeited any of them. Rather, at the employee's election, all of the hours credited were used either to pay the employ-

ee for work absences or to provide for a lump sum payment at the time of termination.

Under the Workers' Compensation Act, if an employee suffers either a temporary or permanent impairment, benefits are payable to that employee in an amount equal to 66⅔% of the employee's "average weekly wage," up to a statutory maximum. Sections 8–42–102(1); 8–42–105(1); and 8–42–106, C.R.S. (1995 Cum.Supp.).

If, as here, the employee is paid by the hour, a daily wage is determined by multiplying the employee's "hourly rate" by the number of hours during the day that the employee was working at the time of the injury. This daily wage is then multiplied by the number of days in the week that the employee was working (or would have worked) at the time of the injury in order to obtain the employee's average weekly wage. Section 8–42–102(2)(c) and (d), C.R.S. (1995 Cum. Supp.).

In November 1992, at the time of the employee's injury here, the pertinent statute, Colo.Sess. Laws 1990, ch. 219, § 8–40–201(19) at 1293–1294, defined "wages" to mean:

> the money rate at which the services rendered are to be recompensed under the contract of hire in force at the time of the injury, either express or implied.

For this purpose, the cost to an employee to continue an employer's group health insurance plan (or the cost of a similar or lesser plan), gratuities reported to the Internal Revenue Service for income tax purposes, and the reasonable value of board, rent, housing, and lodging received from the employer were to be included as "wages." However, under the statute, wages did not include "any similar advantage or fringe benefit not specifically enumerated" in the statute.

Prior to the time that the statute was amended in 1989 specifically to require the inclusion as part of the employee's wages the employee's cost of continuing or replacing an employer's group health insurance plan, see Colo.Sess. Laws 1989, ch. 67, § 8–47–101(2) at 411, two divisions of this court had held that, because such a benefit had a present value, that value was required to be considered as a part of the employee's wages.

*State Compensation Insurance Authority v. Smith,* 768 P.2d 1256 (Colo.App.1988); *Murphy v. Ampex Corp.,* 703 P.2d 632 (Colo.App. 1985).

Likewise, our supreme court had determined that gratuities received by a waitress, although not paid by her employer, were required to be considered as wages. *Petrafeck v. Industrial Commission,* 191 Colo. 566, 554 P.2d 1097 (1976).

In contrast, neither an employer's contribution for FICA, *Floyd v. AMF Tuboscope, Inc.,* 817 P.2d 534 (Colo.App.1990), nor one to PERA (at least where the employee's pension rights have not yet vested), *Russell v. Colorado Division of Employment,* 786 P.2d 483 (Colo.App.1989), is to be included in the average weekly wage computation.

In *Russell,* the division determined that the criteria for including a benefit as a part of the employee's wages, *i.e.,* whether it is a part of "the money rate at which the services are to be recompensed," depends upon whether a "reasonable, present-day, cash equivalent value" can be placed upon it and whether the employee has "reasonable access on a day-to-day basis, either actually or potentially, to the benefit, or an immediate expectation interest in receiving the benefit under appropriate, reasonable circumstances." *Russell v. Division of Employment, supra,* 786 P.2d at 485.

The PET program here clearly meets the criteria established by *Russell.* During each two-week period, the employee is paid for each hour actually worked. In addition, she is credited with an additional 9.5 hours which credit has a current cash equivalent value equal to 9.5 times her hourly wage rate. On the basis of a 40–hour work-week, therefore, the employee under the PET program is paid, or receives credit for, 89.5 hours for each 80 hours that she actually works.

Moreover, once such credit is received, it is never forfeited. The current value of that credit will be paid to the employee, at her election, either as sick leave pay, vacation pay, holiday pay, and other leave time pay, at various times during her employment or, in cash, when her employment ceases.

Under similar plans for leave pay in which leave time once credited is not forfeitable, *i.e.*, it has "vested", courts have uniformly held that such pay must be included in computing an average weekly wage. *See Nielsen v. Burnham & Morrill, Inc.*, 600 A.2d 1111 (Me.1991); *Fougner·v. Boise Cascade Corp.*, 460 N.W.2d 1 (Minn.1990); *Employers Reinsurance Corp. v. Beaty*, 576 S.W.2d 481 (Tex. Civ.App.1979); *General Tire & Rubber Co. v. Industrial Commission*, 221 Ill.App.3d 641, 164 Ill.Dec. 181, 582 N.E.2d 744 (1991); *City of Daytona Beach v. Amsel*, 585 So.2d 1044 (Fla.App.1991) (vested sick leave benefits); *Vida Appliances, Inc. v. Gates*, 416 So.2d 1186 (Fla.App.1982) (vested vacation pay).

Indeed, the only decision rejecting this conclusion is *Tabor v. Levi Strauss & Co.*, 33 Ark.App. 71, 801 S.W.2d 311 (1990), in which the court held that piece-rate workers were not to have bonuses, or vacation pay, or holiday pay added to their wages. There, however, the statute applicable to such workers required that their average weekly wage be determined by dividing their earnings by the number of hours "required to be worked" to receive such earnings. Under this statute, the court held that, because the workers at issue received their bonuses, vacations, and holiday pay without regard to the number of hours that they had worked, they were not "required" to work any hours for such pay, and hence, such pay could not be considered in determining their average weekly wage.

The United States Supreme Court's opinion in *Morrison–Knudsen Construction Co. v. Director*, 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983), upon which the employer here places its primary reliance, does not require a contrary result. That opinion interpreted the federal Longshoremen's and Harbor Workers' Compensation Act, and while that act is similar to the statute under consideration here, the *Morrison–Knudsen* conclusion is not binding upon us.

Further, the *Morrison–Knudsen* court did not consider any monetary payment to an employee, such as we consider here. Rather, the benefits at issue in that case were medical and hospitalization benefits, pension benefits, and job training, all of which were provided by one or more trust funds to which the employer made contributions. Hence, the Supreme Court there was required to focus upon the question whether these benefits were "similar" to specific benefits itemized by the federal statute, rather than upon the question, presented here, whether a cash payment, either now or in the future, is a part of the employee's "money rate of recompense." *See Ashby v. Rust Engineering Co.*, 559 A.2d 774 (Me.1989) (*Morrison–Knudsen* analysis rejected; if specific dollar amount per unit of work time is credited to employee, such credit is a part of employee's wage rate under state statute, irrespective whether it is "similar" fringe benefit).

Finally, the *Morrison–Knudsen* court held that a program providing medical benefits to an employee could have no present value. This conclusion, however, was subsequently rejected by divisions of this court in *State Compensation Insurance Authority v. Smith, supra*, and *Murphy v. Ampex Corp., supra*. And, the Colorado General Assembly has adopted and ratified this contrary conclusion by expressly providing that the cost to the employee of such a benefit must be included in determining the employee's average weekly wage. Colo.Sess. Laws, 1989, ch. 67, § 8–47–101(2) at 411.

Here, then, we conclude that the credit provided to the employee under the PET program must be considered as a part of the employee's "money rate at which [her] services are to be recompensed...."

This does not mean that either the total amount of PET credit accrued to her as of the date of her injury or any amount for which she had been paid prior to her injury is required to be added to her wages. It is, rather, the *rate* of accrual that constituted a part of her money rate of recompense, not the total amount accrued or the amount actually paid. *See Exide Corp. v. Workmen's Compensation Appeal Board*, 653 A.2d 50 (Pa.Commonwlth.1994) (vacation pay should be prorated over entire period in which it is earned; it should not be credited solely to period in which it is received). *See also Lane Enterprises, Inc. v. Workmen's Compensation Appeal Board*, 537 Pa. 426, 644 A.2d 726 (1994) (applying same rule to annual bonus).

Here, the employee was paid, either in cash or credit, for a total of 89.5 hours for each typical two-week period in which she actually worked 80 hours. Hence, to determine her "money rate" for such a period under § 8–40–201(19), and disregarding any other adjustments required by the statute, her hourly rate should be multiplied by 89.5 and the result divided by 80. Then, to obtain her "average weekly wage," that "money rate" amount must be multiplied by the number of hours that she was working each day at the time of her injury, and the resulting figure will be multiplied by the number of days in the week she was working. *See Fougner v. Boise Cascade Corporation, supra.*

The order of the Panel is set aside, and the cause is remanded to it for the entry of an order consistent with the views set forth in this opinion.

HUME and JONES, JJ., concur.