**CITY OF LAMAR and Colorado Compensation Insurance Authority, Petitioners and Cross–Appellees,**

v.

**Gary L. KOEHN, Respondent and Cross–Appellant,**

and

**The Industrial Claim Appeals Office of the State of Colorado, Respondent.**

No. 98CA0233.

Colorado Court of Appeals, Div. A.

Oct. 29, 1998.

Michael J. Steiner, Denver, Colorado, for Petitioner and Cross–Appellee Colorado Compensation Insurance Authority.

Michael W. Seckar, Pueblo, Colorado, for Respondent and Cross–Appellant Gary L. Koehn.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Jeannette W. Kornreich, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office of the State of Colorado.

Opinion by Chief Judge HUME.

In this workers' compensation proceeding, City of Lamar (employer) and its insurer, Colorado Compensation Insurance Authority (collectively CCIA), petition for review of a final order of the Industrial Claim Appeals Office (Panel) which included the value of employer contributions to claimant's pension benefits in the average weekly wage computation for Gary L. Koehn (claimant). Claimant also appeals the exclusion of the value of his vacation and sick leave in this calculation. We conclude that none of these items should be included in the calculation of claimant's average weekly wage, and therefore affirm the order in part, set it aside in part, and remand for a redetermination of the average weekly wage.

The parties stipulated that on the date of claimant's industrial injury, his base average wage was $304 per week. In addition to his wages, he earned vacation time valued at $18.73 per week and sick leave valued at $11.70 per week. Both vacation and sick leave were subject to forfeiture if claimant accrued a specified maximum number of leave days. However, claimant did not forfeit any vacation leave under this policy and was paid his full entitlement.

The parties also stipulated that employer contributed an average of $26.43 per week to claimant's pension. Claimant was fully vested in the pension plan and would receive benefits at age 60 or upon his death.

On these stipulated facts, the Administrative Law Judge (ALJ) concluded that the weekly value of claimant's vacation and sick leave should be included in his average weekly wage. Relying on *Meeker v. Provenant Health Partners,* 929 P.2d 26 (Colo.App. 1996), the ALJ determined that both types of leave had a reasonable, present-day, cash equivalent value, and that claimant had a reasonable expectation of receiving the benefits under appropriate reasonable circumstances. In support, the ALJ stated that the vacation and sick leave constituted a significant component of claimant's compensation package, and noted that claimant has not forfeited any of these benefits.

The ALJ also included in the wage calculation employer's contribution to claimant's pension, on the ground that claimant was fully vested in the plan and had an expectation of receiving the benefit at age 60 or death. The ALJ also noted that the proceeds were not forfeitable.

The Panel agreed that the pension contributions should be included in claimant's average weekly wage. In considering CCIA's argument that *Meeker* was wrongly decided, it found that although the argument was not without merit, it was bound by a published appellate decision. However, it distinguished *Meeker* by noting that because the vacation and sick leave here was capped and subject to forfeiture, an employee could be precluded from redeeming the value of these benefits. Thus, it determined that the vacation and sick leave should not be included in determining the proper wage amount, and modified the ALJ's order accordingly.

■ CCIA renews its contention that *Meeker* was wrongly decided, a stance the Panel also adopts and, alternatively, argues that even if we choose to follow that precedent, employer's contributions to claimant's pension do not meet the *Meeker* standard. Claimant contends that the vacation and annual leave must be included in his average weekly wage because they were not in fact forfeited. We agree with CCIA that the pension benefits should not be included and disagree with claimant's contention.

The term "wages" means the money rate at which the services rendered are recom-

pensed under the contract of hire in force at the time of the injury. Section 8–40–201(19)(a), C.R.S.1997.

When the Workers' Compensation Act was enacted in 1919, "wages" included "the reasonable value of board, rent, housing, lodging or any other similar advantage received from the employer." Colo. Sess. Laws 1919, ch. 210, §47 at 716. Various benefits fell within this "similar advantage" definition, including health and life insurance, *see Murphy v. Ampex Corp.,* 703 P.2d 632 (Colo.App.1985), but not FICA tax payments, *see Gregory v. Crown Transportation,* 776 P.2d 1163 (Colo. App.1989), or unvested PERA contributions. *See Russell v. Colorado Division of Employment,* 786 P.2d 483 (Colo.App.1989).

In 1989, the definition of "wages" was narrowed. It still included board, rent, housing and lodging, specifically added gratuities, and certain costs of continuing or converting health insurance, but excluded, for the first time, "any similar advantage or fringe benefit not specifically enumerated." Colo. Sess. Laws 1989, ch. 67, § 8–47–101(2) at 411. This provision remains essentially unchanged. *See* § 8–40–201(19)(b), C.R.S.1997.

■ In *Meeker v. Provenant Health Partners, supra,* 929 P.2d at 29, a division of this court considered "whether a cash payment, either now or in the future, is a part of the employee's 'money rate of recompense.' " The test adopted to make this determination was that set forth in *Russell v. Division of Employment, supra,* which considered whether a reasonable, present-day cash equivalent value can be placed upon the benefit, and whether the employee has reasonable access to the benefit on a day-to-day basis, or an immediate expectation interest in receiving the benefit under appropriate, reasonable circumstances. CCIA asserts that this test is inappropriate because *Russell* was decided under the pre–1989 version of the definition of "wages" and was used to determine whether a payment is a "similar advantage"; however, we perceive no reason why it cannot also apply in determining whether a benefit constitutes a deferred cash payment.

The benefit in *Meeker* consisted of personal employee time which was given in lieu of

sick or vacation time. Since this benefit had no cap or risk of forfeiture, the division concluded that it constituted "wages."

In support, the *Meeker* division cited *Ashby v. Rust Engineering Co.*, 559 A.2d 774 (Me.1989), for the proposition that if a specific dollar amount per unit of work is credited to the employee, such credit is a part of the employee's wage rate under the state statute, irrespective of whether it is a "similar" fringe benefit. We note that the legislative response to *Ashby* was promptly to amend the statute to provide that fringe benefits may not be included in the average weekly wage. *See Ciampi v. Hannaford Bros. Co.*, 681 A.2d 4 (Me.1996).

In subsequent amendments of § 8–40–201, our General Assembly has failed to respond in like manner, thereby signaling an intent to acquiesce in the *Meeker* interpretation of accrued leave as a deferred cash payment, rather than a "similar advantage" which would be excluded from the average weekly wage by operation of § 8–40–201(19)(b). *See People v. Hynes,* 917 P.2d 328 (Colo.App. 1996)(when a statute is amended, judicial construction previously placed upon statute is deemed approved by the General Assembly to the extent that the provision remains unchanged).

■ Thus, we conclude that the *Meeker* standard should apply in determining whether claimant's vacation and sick leave was included in his average weekly wage. However, we agree with the Panel that the leave time at issue here is distinguishable from that in *Meeker* because here it is subject to forfeiture after a specified maximum number of days has been accrued. A forfeiture provision may preclude an employee from redeeming unlimited accumulated leave time at termination. Since the value of claimant's leave time is dependent upon actual usage, and will decline if in fact it is not used, it cannot be considered a cash equivalent like the personal employee time in *Meeker.* Therefore, the Panel correctly declined to include the value of this leave in claimant's average weekly wage.

For different reasons, we conclude that employer's contribution to claimant's pension cannot be included in determining his average weekly wage.

■ The cardinal rule governing the interpretation of statutes is to ascertain and give effect to the intent of the General Assembly. When, as here, a plain reading of a statute does not reveal that intent, it may be discerned through a consideration of various indicators. *Subsequent Injury Fund v. King,* 961 P.2d 575 (Colo.App.1998).

A review of the legislative history surrounding the 1989 amendments to the definition of "wages" reveals that an employer's contributions to health insurance, life insurance, and pension plans were specifically discussed. Upon a ten to one vote, the committee decided against including life insurance and pension contributions in the calculation of a claimant's wage, but favored the inclusion of health insurance. *See* Hearings on H.B. 1322 before the House Committee on Agriculture, Livestock and Natural Resources, 57th General Assembly, First Session (February 8, 1989).

Thus, to the extent the definition of "wages" may be deemed ambiguous, the legislative history supports our conclusion that pension contributions are excluded from the determination of claimant's average weekly wage.

RULAND and STERNBERG *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1998.