416 So.2d 1186 (1982)
VIDA APPLIANCES, INC. and Zurich-American Insurance Company, Appellants/Cross-Appellees,
v.
James GATES, Appellee/Cross-Appellant.
No. AI-292.
District Court of Appeal of Florida, First District.
June 30, 1982.
Rehearing Denied August 4, 1982.
*1187 Albert P. Massey, III, of Pyszka & Kessler, P.A., Fort Lauderdale, for appellants/cross-appellees.
Dennis M. Usdan of Abramowitz, Altman & Usdan, Plantation, for appellee/cross-appellant.
ERVIN, Judge.
In this workers' compensation appeal, we find that claimant James Gates' October 1, 1979 accident entitles him to full wage-loss benefits, because he did not limit his income or fail to accept employment, and that under the facts of this case, the deputy commissioner correctly included vacation pay in the computation of claimant's average weekly wage.
Fifty-nine year old James Gates, the appellee/cross-appellant herein, worked for Vida Appliances as a delivery man. While unloading a truck he slipped and fell, suffering permanent anatomical impairment. Gates had eleven years of schooling but no high school diploma. He had worked only in various menial tasks unloading trucks, painting, doing maintenance work, as a stock clerk, and laboring at construction sites.
Upon reaching maximum medical improvement, his doctor advised that he could return to the job market but that he was restricted to light work. Despite occasional yet persistent pains, he made a rather extensive job search to numerous motels, a mall, supermarket, the state employment service, and other locations. His former employer, Vida Appliances, refused to rehire him for light work. The other job sites at which he applied lost interest in him as soon as he indicated that he was seeking light work, and the state employment service similarly was unable to assist him. The deputy commissioner found this to be a competent, good faith work search.
At the hearing the employer/carrier (e/c) presented testimony by a vocational counselor *1188 who indicated that he had conducted a two-hour interview with Gates and reviewed his medical records. The counselor felt certain that Gates was employable in the Broward County job market in a light maintenance job making $175 per week and that such jobs were available. Candidly, the counselor admitted that he knew of no specific jobs available to the claimant, nor had he actually canvassed the job market.
The deputy commissioner also received testimony that the claimant made $180 per week before his injury, received uniforms worth $10 per week from his employer and was paid in cash an additional $360 during a two-week period preceding his injury. According to the employer's secretary, this sum represented vacation pay which Gates was taking in the form of cash in lieu of actual vacation time off. The secretary stated that this was a common practice among the employer's truck drivers, and, unlike all other fringe benefits, this was the only benefit, if paid in cash, that was subject to social security and withholding taxes, thereby making it similar to wages.
Based on the foregoing, the deputy commissioner concluded that Gates had an average weekly wage of $220 per week, but that due to the claimant's employment background, age, education and anatomical impairment, the claimant only had a wage-earning ability of $125 per week. Gates was found to be entitled to wage-loss benefits, but the monthly benefit payments were to be computed based upon his earning ability. On appeal the e/c argues that the finding of claimant's earning capacity should have been $175 due to the vocational counselor's testimony, and that the average weekly wage amount could have only been computed by erroneously considering vacation pay. The claimant's cross-appeal counters that the inclusion of the $125 per week earning ability finding in any computation to determine wage-loss benefits was error.
The computation of the claimant's earning ability and the correctness of its application to any determination of actual wage-loss benefits are issues that appear inextricably linked. By our finding that the claimant's cross-appeal is meritorious, the correctness of the deputy's determination of the amount of claimant's wage-earning capacity is superfluous. This is because the deputy commissioner found that the claimant had conducted a good faith job search, and there is substantial competent evidence for that view.
Section 440.15(3)(b)(2), Florida Statutes (1979), states that the salary, wages, or other remuneration that a claimant might have earned shall be treated as if they had actually been earned. However, this statutory mandate does not become effective, unless it can be shown that the claimant voluntarily limited his income, by not conducting a competent, good faith job search, or unless he fails to accept employment within his abilities. Since the claimant conducted a competent, good faith job search, the burden is upon the employer to demonstrate that the claimant has refused work or has somehow voluntarily limited his income. Pompano Roofing Co., Inc. v. O'Neal, 410 So.2d 971, 972 (Fla. 1st DCA 1982).[1]
This view is totally consistent with the Florida Supreme Court's most recent opinion on the subject of work searches in which the court noted that after a claimant demonstrates "some effort" to obtain work within his limitations, the burden shifts to the employer to demonstrate that suitable employment is available. Wright v. Gulf & Western Products, 401 So.2d 1316, 1318 (Fla. 1981); see also Flesche v. Interstate Warehouse, 411 So.2d 919, 926 n. 14 (Fla. 1st DCA 1982). Despite the fact that cases such as Wright and Flesche both involve questions of wage-earning capacity loss and not wage-loss, they do provide some guidance as to the subject of work searches.
*1189 The claimant having demonstrated that he had made more than "some effort" to find work, it is apparent that the e/c had the burden of showing that suitable employment was available. The e/c attempted to meet this burden with the vocational counselor's testimony. While somewhat probative, it was insufficient to carry the burden, because the counselor had neither canvassed the job market, nor could he point to an actual suitable employer who would readily hire the claimant.[2] Therefore, while there may have been some basis upon which to determine claimant's earning ability to be $125 per week, it was error to apply this finding to in any way limit the dollar amount of claimant's wage-loss benefits, because the evidence did not indicate that the claimant had failed to accept a job offer or that he limited his income.[3]
With regard to the computation of claimant's average weekly wage, there appears no way that the $220 per week amount could have been determined by the deputy without inclusion of the additional $360 vacation pay. Belle v. General Electric Co., 409 So.2d 182, 183-184 (Fla. 1st DCA 1982), appears to be supportive of the deputy's determination to include the vacation pay in computing the claimant's average weekly wage, although we feel this case provides a much stronger factual basis upon which to affirm. This is because the vacation pay, having been paid, had obviously vested, cf. Pate v. Maddox Foundry & Machine Works, 414 So.2d 524 (Fla. 1st DCA, 1982) petition for rev. docketed, no. 62,090 (Fla., May 20, 1982), and was comparable to actual wages, which is of course included in the computation of a claimant's average weekly wage. § 440.14(1)(a), Fla. Stat. (1979).
This case is therefore AFFIRMED with the exception of the limitation upon the claimant's right to full wage-loss benefits due to wage-earning ability. We, therefore, amend paragraph two of the decretal portion of the deputy commissioner's order by striking the words "based upon the Claimant's ability to earn $125 per week," so that the claimant may receive the maximum wage-loss benefits subject only to the statutory formula. § 440.15(3)(b)(1), Fla. Stat. (1979).
The order is affirmed as modified.
ROBERT P. SMITH, Jr., C.J., and SHAW, J., concur.
NOTES
[1] While Pompano Roofing is a case dealing with the temporary partial disability wage-loss statutory provision in Section 440.15(4)(b), Florida Statutes, it will be observed that this provision is almost word-for-word the same as the statutory provision relevant to this case. Compare § 440.15(3)(b)(2), Fla. Stat. The case is obviously applicable.
[2] It should be noted that the testimony of vocational counselors in the area of employment searches has traditionally been viewed as being of extremely limited probative value. Errol Estates, Ltd. v. O'Neal, no. 2-3031 (IRC, Sept. 7, 1976), cert. denied, 348 So.2d 951 (Fla. 1977); Cook v. Hamilton County Bd. of County Comm'rs., no. 2-2984 (IRC, June 16, 1976); but cf. Brooks v. Haines City Citrus Growers Assoc., 382 So.2d 725 (Fla. 1st DCA 1980). The case at bar furnishes support for the traditional rule, because while the counselor was able to testify as to the job market generally, he could point to no specific opportunities available to the claimant.
[3] We point out that wage-loss benefits are payable for a particular month only after it has been determined what the claimant's actual wage-loss was; whether the claimant failed to accept employment or voluntarily limited his income; and if so, in what amount. Assuming that the vocational counselor had been able to point to a specific job with a particular employer that the claimant could fill, it would still have to be shown that the claimant knew of the job availability, could have obtained it, and that it was within his abilities, before the claimant's past wage-loss benefits could have been limited. In other words, even offering a job to a claimant for the first time at a hearing, which job was previously unknown to claimant, would not act to bar claimant's previous right to 100% wage-loss benefits. Conversely, it follows that if the claimant did not promptly act on the offer, his right to future full wage-loss benefits would be affected.