452 So.2d 634 (1984)
Van O. CARRUTH, Appellant,
v.
ALLIED PRODUCTS CO. and Crawford & Company, Appellees.
No. AV-267.
District Court of Appeal of Florida, First District.
June 12, 1984.
*635 Susan R. Whaley, of Macfarlane, Ferguson, Allison & Kelly, Tampa, and H. Guy Smith, Lakeland, for appellant.
Robert M. Todd, of Mattson, McGrady & Todd, P.A., St. Petersburg, for appellees.
WIGGINTON, Judge.
Claimant appeals and the employer/carrier cross appeal the deputy commissioner's order setting the date of claimant's maximum medical improvement, ordering the E/C to bring current temporary total disability benefits, denying claims for additional temporary, wage loss and rehabilitative benefits, and assessing a 10 percent penalty on the E/C's prior underpayment of temporary total disability payments. We affirm in part and reverse in part.
Claimant injured his back at work on January 12, 1981. He ultimately came under the care of Dr. DeWeese who diagnosed a herniated disc, and performed a laminectomy and "diskectomy" on claimant's back on September 24, 1981. Dr. DeWeese released claimant to return to work on January 6, 1982, with the opinion that claimant would be medically able to perform his job as a welder, as long as he not lift anything over seventy-five pounds. He placed no other specific limitations on claimant's activities.
Dr. DeWeese again saw claimant on April 26, 1982, when he assigned him a permanent impairment rating of 15 percent of the body as a whole based on the AMA Guides. He determined that claimant had reached maximum medical improvement, although noting that claimant's condition had remained unchanged between January 6 and the April 26 conference. He later testified that he set claimant's date of MMI at April 26 for two reasons, one being his desire that claimant return to work before he declared MMI, and the other being his feeling that claimant might improve between January 6 and April 26.
On January 15, claimant returned to his original job as an arc welder but found it necessary to take pain pills every day to enable him to work. However, despite his feeling that he had been unable to perform as adequately upon his return as before his accident, his manager later testified that claimant had handled his job very well.
Claimant testified that it had been his intention to continue in his capacity as a welder for the employer until July, 1985, when he had planned to retire. However, on March 1, 1982, claimant was laid off in preparation for the employer's closing of its St. Petersburg plant. He immediately began searching for work, but without success. His job search records reveal that he made at least 106 job applications along with inquiries made to the Florida State *636 Employment Service. Claimant testified that a frequent refusal of employment was due to the fact that his application indicated he had suffered a back injury. He ultimately found part-time work as a maintenance man in June, 1983, through the employment service. He was not required to fill out an application form for that job.
Claimant received temporary total disability benefits at the rate of $144.97 for the period of time following the industrial accident until January 6, 1982, the date Dr. DeWeese released claimant to return to work. He filed a claim for benefits on March 30, 1983, seeking entitlement to temporary total or temporary partial disability benefits after January 6 through April 26, 1982, the date contended by Dr. DeWeese to be claimant's date of MMI. In the alternative, anticipating the deputy's finding that claimant had reached MMI prior to April 26, claimant requested wage loss benefits from and after the date the deputy chose, through June 30, 1983; or, a determination of whether he was permanently and totally disabled. Claimant also requested a determination of his proper average weekly wage and concomitant compensation rate, an award of rehabilitation benefits, penalties, interest, costs and attorney's fees.
The E/C filed notices to controvert the wage loss claims on March 29 and May 17, 1983, reserving the right to controvert the claims on any other grounds which might appear.
At a prehearing conference, the E/C stipulated to a corrected average weekly wage of $235, with a correspondingly higher compensation rate of $156.67. Remaining at issue, however, was claimant's contention that to his average weekly wage figure should be added the reasonable value of transportation provided by the employer for the 66-mile round trip between claimant's home and the St. Petersburg plant. Claimant later testified that the employer had provided this transportation for at least thirteen weeks prior to his industrial accident.
Following the hearing on the claim, the deputy found that claimant reached MMI on January 6, 1982; had resumed active gainful employment on January 15, performing the same functions as he had performed previously with the employer; failed to show a change in his employment status due to his compensable injury; and, therefore, failed to show an entitlement to wage loss benefits for the period of time claimed. The deputy also found that the employer had provided transportation to and from work at the value of $66 per week, arriving at that figure by applying the statutory presumption of twenty cents per mile derived from section 440.13(4), Florida Statutes (Supp. 1980). Consequently, claimant's average weekly wage was increased to $301, with a corresponding compensation rate of $200.67. The deputy assessed penalties against the unpaid portion of claimant's temporary total disability benefits to which amount the E/C stipulated at the prehearing conference, but excused a penalty against the remaining difference resulting from the inclusion of the $66 per week transportation benefits. Finally, the deputy found the record did not support the claim for rehabilitative benefits.
On appeal, claimant challenges the deputy's denial of his claim for wage loss benefits. Specifically, he challenges the deputy's finding of the date of maximum medical improvement; that claimant had performed his duties without difficulty; that claimant's employment had not been sheltered; and that claimant's wage loss was due not to his injury but to economic conditions.
The deputy's determination that claimant had resumed active gainful employment, had performed his job duties well, and had not been confined to sheltered employment, is supported by competent and substantial evidence in the record. We therefore affirm.
We also affirm the point raised by claimant regarding the deputy's finding of MMI. The deputy justifiably concluded that claimant's recovery realistically *637 reached its zenith on January 6, 1982, based on Dr. DeWeese's testimony that claimant's condition remained essentially unchanged between January 6 and April 26, 1982. Dr. DeWeese's reason for his not assigning MMI until April 26, was primarily related to his desire that claimant artificially retain his disability until it could be determined that he would be able to receive back his former, or another, job. Also, his statement that he thought claimant might improve during this period, was, we feel, strictly gratuitous.
Consequently, we would distinguish this case from Utley-James, Inc. v. Lady, 448 So.2d 1191 (Fla. 1st DCA 1984), wherein this Court stated it would not "compel" a deputy commissioner to accept physicians' opinions as to MMI "based on retrospective contemplation." 448 So.2d at 1193. In Lady, the claimant was released by his initial treating physician to return to work, but was unable to perform his job due to pain. He was thereafter referred by his doctor to a second physician for further examination and treatment. The second physician suggested surgery, but claimant declined and discontinued treatment on April 13, 1983. Although the second physician testified that in retrospect the claimant's condition had essentially remained unchanged throughout the term of his care, and that he would therefore defer to the first physician's opinion as to MMI being sometime in December, 1982, the deputy found the date of MMI to be April 13, 1983. We affirmed, holding that despite the failure of his attendance in effecting improvement, the second physician's care had at all times been administered with the expectation that it would be remedial. Consequently, not until April 13 could it have been concluded realistically that claimant's condition could not be improved.
However, in the instant case, as we pointed out earlier, the facts indicate that Dr. DeWeese did not harbor any realistic hopes for claimant's improvement between January 6 and April 26. And, as always, it was within the deputy's province to determine, from the medical evidence, the date of MMI. Accordingly, the deputy's determination that claimant's date of maximum medical improvement was January 6, 1983, is affirmed.
Nevertheless, we must reverse the deputy's denial of wage loss, as we disagree with his conclusion that the claimed wage loss could be due only to economic conditions, that is, claimant's being laid off, rather than to the compensable injury. The deputy was under the impression that since claimant had not shown a "temporal" causal connection between the industrial injury and claimant's initial unemployment, claimant was precluded from demonstrating a compensable wage loss by a subsequent work search. Specifically, relying on Citrus Central v. Parker, 423 So.2d 610 (Fla. 1st DCA 1982), and related cases, the deputy held:
Where, as here, the employee-claimant fails to meet the statutorily described burden of proof of establishing a temporal relationship between the compensable injury and the wage loss claimed, the questions with reference to the adequacy or inadequacy of the employee's work search subsequent to the attainment of maximum medical improvement are rendered moot in the absence of a situation wherein the employee is returned to work and afforded "sheltered" employment.
However, the deputy did not have the benefit of our recent decision in Williams Roofing, Inc. v. Moore, 447 So.2d 968 (Fla. 1st DCA 1984) in which, out of our concern for a possible misunderstanding of our intent in decisions such as Parker, we held:
Whether a claimant has shown a causal relationship between the injury and a change in employment status is a factual question to be determined by the deputy commissioner from competent substantial evidence. The presence or absence of any particular fact, such as a layoff due to economic conditions, should not be legally determinative of the deputy commissioner's finding. Rather, the deputy commissioner must look to the totality of the circumstances to determine *638 whether a claimant has shown a causal relationship between the injury and the wage loss.
447 So.2d at 972 (emphasis added).
Consequently, we remand the cause to the deputy commissioner for consideration of claimant's work search evidence, in order to determine whether, by that evidence, claimant has demonstrated a causal connection between his period of unemployment and his industrial injury. To that end, the deputy and the parties should be cognizant of our very recent opinion in City of Clermont v. Rumph, 450 So.2d 573 (Fla. 1st DCA 1984), setting forth claimant's burden of proof to demonstrate a causal relationship between his injury and subsequent wage loss, in light of the 1983 amendment to section 440.15(3)(b)2, Florida Statutes.
On cross appeal, the employer/carrier challenge the deputy's assessment of a penalty and his calculation and inclusion of the value of transportation in claimant's average weekly wage. We affirm as to both points.
The penalty relates solely to the E/C's underpayment of temporary total disability benefits previously paid to claimant. Although the E/C did file notices to controvert, the notices relate only to the claimed wage loss benefits. As the E/C did not pay all of the TTD benefits due within fourteen days of when they became due, the deputy properly assessed a penalty under section 440.20(7), Florida Statutes.
Regarding the employer-provided transportation, claimant testified that the employer had provided such transportation for at least thirteen weeks prior to the injury, and the E/C did not show otherwise. Although claimant also testified that on a few unspecified occasions he had driven his own automobile to work in order that he could leave early, we hold that such a departure from the employer-provided benefit was insignificant.
Finally, in establishing the value of the employer-provided transportation, the deputy did not err in applying the presumption found in section 440.13(4), Florida Statutes (Supp. 1980) (now section 440.13(5), Florida Statutes (1983)). In Layne Atlantic Company v. Scott, 415 So.2d 837 (Fla. 1st DCA 1982), we accorded a deputy commissioner "wide fact-finding latitude" in determining the value of employer-provided benefits, and directed the deputy to ascertain the value "if reasonably possible." The deputy's valuation in the instant case was reasonable; and we point out that the E/C did not at the hearing refute claimant's suggestion of twenty cents per mile, which amount was in accordance with the statute.
Accordingly, this cause is AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this opinion.
MILLS and SHIVERS, JJ., concur.