677 So.2d 942 (1996)
UNIVERSITY OF FLORIDA and Division of Risk Management, Appellants,
v.
Calvin BOWENS, Appellee.
No. 93-815.
District Court of Appeal of Florida, First District.
July 25, 1996.
Holly A. Davis and Elizabeth H. Webb, Gainesville, for Appellants.
Craig F. Hall, Gainesville, for Appellee.
DAVIS, Judge.
The University of Florida and Division of Risk Management (employer and servicing agent, respectively, hereinafter referred to as e/sa) appeal an order requiring them to pay claimant, Calvin Bowens, workers' compensation disability benefits at certain rates. There was no dispute over the compensability of the injuries resulting from Bowens' October 9, 1989, accident. The issue below was the correct determination of claimant's average weekly wage (AWW) for the thirteen week period immediately preceding his accident. The parties agreed on the base rate for the AWW plus additions for uniforms and health insurance, but could not agree whether some value for leave time accrued by claimant prior to the accident should be included. Concluding that the judge of compensation claims correctly included accrued annual leave in the computation of claimant's average weekly wages, we affirm.
Resolution of this issue requires an understanding of the definitions of "average weekly wage" and "wages" in the worker's compensation statutes. The JCC correctly held that claimant's AWW should include vested annual leave time pursuant to subsection 440.02(23), Florida Statutes (1989), finding that the annual leave time constitutes "consideration received from the employer that is considered income under the Internal Revenue Code in effect on January 1, 1987." Section 440.14, Florida Statutes (1989), provides in pertinent part:

*943 (1) Except as otherwise provided in this chapter, the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined, subject to the limitations of s. 440.12(2), as follows:
(a) If the injured employee has worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the injury, his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the 13 weeks....
(Emphasis added.) Subsection 440.02(23), Florida Statutes (1989), defines the term "wages" as meaning:
the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury, together with ... any other consideration received from the employer that is considered income under the Internal Revenue Code in effect on January 1, 1987 ...
(Emphasis added.)
Prior to the 1987 amendment to section 440.02, which added the above-emphasized language to what was previously subsection 440.02(21), this court required that leave time or similar benefits be included in the computation of a claimant's AWW only "when such benefits have a real present day value to the employee, i.e., `the worker must be able to withdraw the funds at will or the vesting of the benefits must be assured.'" City of Daytona Beach v. Amsel, 585 So.2d 1044, 1047 (Fla. 1st DCA 1991). See also Vida Appliances, Inc. v. Gates, 416 So.2d 1186 (Fla. 1st DCA 1982); Sunland Training Ctr. v. Irving, 384 So.2d 745 (Fla. 1st DCA 1980). In Dubois Farms, Inc. v. Paul, 566 So.2d 923 (Fla. 1st DCA 1990), however, this court interpreted the 1987 amendment to the subsection as follows:
In section 440.02(21) [now 440.02(23)], the Legislature included "any other consideration received from the employer that is considered income under the Internal Revenue Code in effect on January 1, 1987." The Legislature did not say "gross income" or reference section 61 of the Internal Revenue Code which defines "gross income," or otherwise evidence an intent that "wage" concepts under the workers compensation law should be governed by strict tax concepts of "gross income" under the Code and the Congressionally enacted exclusions from "gross income."
Instead, it is our view that by its use of the word "income" in section 440.02(21), the Legislature intended this court to be guided by the broad concept of "income" under the Code in arriving at a determination of what consideration is includable in AWW.
"Income" for purposes of the Internal Revenue Code means all accessions to wealth, in any form, realized by a person, or from which a person receives a benefit. See Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955); and Lonsdale v. CIR, 661 F.2d 71(5th Cir.1981).
566 So.2d at 925-26. (Footnotes omitted.)
Based on this interpretation of subsection 440.02(23), which utilizes a broad definition of the term "income," for purposes of defining "wages," the judge in the present case did not err in finding that the value of claimant's accrued annual leave time should have been included in the computation of his AWW for those weeks in which it was earned and vested. The claimant's "right of present or future enjoyment of ... leave was fixed by his employment contract, and should have been included in the average weekly wage calculation." Sagar v. University of Florida, 652 So.2d 469, 470 (Fla. 1st DCA 1995). It is undisputed that this accrued annual leave time is a consideration of significant value that claimant receives from Employer, in addition to the monies paid claimant, as compensation for the performance of the duties of his employment. Marion Correctional Inst., Fla. Dep't of Corrections v. Kriegel, 522 So.2d 45, 47 (Fla. 1st DCA), rev. denied mem., 531 So.2d 1354 (Fla.1988).
Obviously, the value of accrued annual leave is not taxable until the monies are received, but that fact does not require the exclusion from the definition of wages of the *944 value of these benefits as earned. The issue is not when "income" becomes subject to federal income taxation. Cf. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940). The issue is whether the accrued but unused leave time constitutes "wages earned" for the purposes of calculating average weekly wage under the workers' compensation law of this state. We decline to read into chapter 440 the "strict tax concepts" that this court has previously rejected for the purposes of calculating average weekly wages. See Dubois Farms, 566 So.2d at 925-26. The decision in Dubois Farms makes quite clear that "wages" include all forms of wealth or benefit that fall within the concept of "income" defined in the Internal Revenue Code, whether or not that form of wealth may actually be taxable. The 1987 amendment to the definition of wages incorporated only this broad definition of income and not other provisions of the Internal Revenue Code dealing with whether or when a tax must be paid on the "income."
The evidence in this case indicates that claimant earned accrued annual leave time at the rate of 4 hours per pay period (or a total of 8 hours per month). The judge of compensation claims interpreted the testimony on the nature of the leave to mean that "any annual leave accrued by an employee becomes immediately vested." Contrary to the e/sa's contention, the actual payment of accrued leave time to claimant after the industrial accident, instead of during the 13 weeks immediately prior to the accident, does not preclude the inclusion of its value in the computation of claimant's AWW during the weeks in which it was earned and vested. Section 440.14 does not limit the inclusion of wages to that paid in the 13 weeks immediately preceding the industrial accident, but instead provides that AWW shall be based on "wages earned in such employment" during the 13-week period immediately preceding the accident.
Accordingly, the order of the JCC is AFFIRMED.
KAHN, J., concurs.
BENTON, J., dissents with written opinion.
BENTON, Judge, dissenting.
The "basis on which to compute" appellant's workers' compensation benefits "shall be one-thirteenth of the total amount of wages earned," § 440.14, Fla. Stat. (1989), during the thirteen weeks immediately preceding his compensable accident. At the time of Mr. Bowens' injury, the Workers' Compensation Law provided:
"Wages" means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury, together with the reasonable value of board, meals, rent, housing, lodging, parking; employer contributions for uniforms or cleaning allowances; employer contributions for legal, life, health, accident, or disability insurance for the employee or dependents, excluding social security benefits; contributions to pension plans to the extent that the employee's rights have vested; any other consideration received from the employer that is considered income under the Internal Revenue Code in effect on January 1, 1987; and gratuities received in the course of employment from others than the employer, only when such gratuities are received with the knowledge of the employer. In employment in which an employee receives consideration other than cash as a portion of this compensation, the reasonable value of such compensation shall be the actual cost to the employer.

§ 440.02(23), Fla. Stat. (1989)(emphasis added). The nub of the present controversy should be whether unused leave accrued by a State University System employee like Mr. Bowens "is considered income under the Internal Revenue Code in effect on January 1, 1987." § 440.02(23), Fla. Stat. (1989).
The opinion in Dubois Farms, Inc. v. Paul, 566 So.2d 923 (Fla. 1st DCA 1990) defined the "concept of `income' under the Code in arriving at a determination of what consideration is includable in AWW," Id. at 925, as follows:
"Income" for purposes of the Internal Revenue Code means all accessions to wealth, in any form, realized by a person, *945 or from which a person receives a benefit. See Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955); and Lonsdale v. CIR, 661 F.2d 71 (5th Cir.1981).
Paul, 566 So.2d at 924 (emphasis added). Paul actually received employer-provided transportation, over and above his regular salary, during the relevant period. Transportation furnished by an employer has been recognized as income under the Internal Revenue Code. See e.g., Ireland v. United States, 621 F.2d 731, 735 (5th Cir.1980).
Leave credits for State University System employees like Mr. Bowens differ from employer-provided transportation and other benefits treated as income for tax purposes. During the pertinent period, University employees like Mr. Bowens could accrue annual leave credits in excess of 240 hours, but any annual leave credits in excess of 240 hours not used by the end of the calendar year expire valueless. Fla. Admin. Code R. 6C5.740(9)(c)1.g, superseded by Fla. Admin. Code R. 6C-5.920(10)(b). University employees with at least six months' service could be paid for accrued annual[1] leave only upon separation, and then only up to the 240-hour limit. Fla. Admin. Code. R. 6C5.740(9)(c)4.b, superseded by Fla. Admin. Code R. 6C-5.920(10)(e). The value of leave credits, if any, remains contingent until such time, if ever, as leave is taken or money is paid in lieu of leave.
In Acquisto v. C.I.R, T.C.M. (P-H) 91,293, 1991 WL 116596, aff'd, 972 F.2d 1349 (11th Cir.1992), the United States Tax Court held that a Florida school teacher's
unused sick leave was not taxable to [the teacher] until he actually received it. There was no transfer of property as provided in section 83. The unused sick leave was not transferred to petitioner until the year he retired. The doctrine of constructive receipt, as codified in section 451, is inapplicable because the unused sick leave was not "credited to his account, set apart for him, or otherwise made available so that he [could] draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given." Sec. 1.451-2(a), Income Tax Regs.
Just as the Acquisto court concluded that Acquisto had "received" sick leave, not when it accrued, but when he was paid for it in cash, so here Mr. Bowens did not receive income simply because leave credits accrued.
Monetary distributions on account of accrued leave, if made during the relevant period, are includable when average weekly wages are calculated. Cf. Vida Appliances, Inc. v. Gates, 416 So.2d 1186, 1189 (Fla. 1st DCA 1982)(average weekly wage calculation included $360 payment in lieu of vacation leave made during the two-week period prior to the compensable accident). Ordinarily, however, when an employee like Mr. Bowens uses up leave credits, he receives no additional income in the sense of an increase in weekly wages, because his salary is the same, whether he is at work or on paid leave.
Only when salary is paid while an employee is on leave or when money is paid in lieu of leave does an employee realize income on account of leave. An employee's average weekly wage does not increase when he takes leave, yet continues to receive nothing more than his regular salary. Mr. Bowens did not realize income over and above his salary, nor receive any benefit properly taken into account in calculating average weekly wages, simply because he accrued leave credits. See, e.g., Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940)(realization of income, rather than acquisition of the right to receive it, is the taxable event; realization occurs when the last step is taken by which the employee obtains the fruition of the economic gain which has already accrued to him).
The view that accrued but unused leave constitutes wages lacks a basis in the amended statute. The majority's reading of the statute gives rise to arcane accounting questions inimical to the orderly functioning of a *946 system designed to be self-executing. Attributing a specific portion of an employee's accrued leave to a given thirteen-week period, not to mention assigning an appropriate monetary value, can present a daunting challenge. See, e.g., Fla. Admin. Code R. 6C5.920(10)(d). The cases cited by the majority in support of including accrued but unused leave credits in the average weekly wages calculation antedate the 1987 amendment to former subsection 440.02(21),[2] or, in the cases of City of Daytona Beach v. Amsel, 585 So.2d 1044, 1047 (Fla. 1st DCA 1991) and Sagar v. University of Florida, 652 So.2d 469 (Fla. 1st DCA 1995) rely on cases that predate the amendment, because the compensable accidents antedated the amendment. Sagar, 652 So.2d at 470 n. 2 ("both Amsel and the present case involve industrial accidents that occurred prior to 1987, when the term `wages' was amended"). I respectfully dissent.
NOTES
[1] State University System employees may in theory accrue unlimited sick leave credits, but only employees with at least ten years' service can receive money on account of accrued sick leave at separation. Fla. Admin. Code R. 6C5.740(9)(d)5.c, superseded by Fla. Admin. Code R. 6C-5.920(9)(f).
[2] In 1987, the Legislature amended the definition of "wages" under the workers' compensation act:

"Wages" means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury, together with including the reasonable value of board, rent, housing, lodging; employer contributions for life, health, accident, or disability insurance for the employee or dependents, excluding social security benefits; contributions to pension plans to the extent that the employee's rights have vested; any other consideration received from the employer that is considered income under the Internal Revenue Code in effect on January 1, 1987; ,or similar advantage received from the employer.
Ch. 87-330, § 1, at 2135, Laws of Fla. (Deletions struck through; additions underlined.)