678 So.2d 503 (1996)
UNIVERSITY OF FLORIDA and Division of Risk Management, Appellants,
v.
Lula Mae COLLINS, Appellee.
No. 94-428.
District Court of Appeal of Florida, First District.
August 28, 1996.
*504 Barry D. Graves of Ritch & Graves, P.A., Gainesville, for Appellants.
*505 Thomas W. Davis of Davis & Fernandes, Sr., Gainesville, for Appellee.
PER CURIAM.
The University of Florida (Employer) and Division of Risk Management (Carrier) appeal, and Lula Mae Collins (Claimant) cross appeals a workers' compensation order that awards temporary total and permanent total disability benefits for certain periods, supplemental benefits, penalties, interests and costs. We affirm as to the issues raised on appeal, and reverse and remand as to the issue raised on cross appeal.
On April 4, 1988, the 64-year-old claimant slipped and fell on a wet floor, fracturing her right wrist. Claimant had worked for Employer for approximately 1½ years as a full-time custodian. At the time of the accident, Employer provided the following fringe benefits to Claimant: accrued retirement benefits, annual and sick leave that accrued at the rate of four (4) hours each bi-weekly pay period, and smocks. Employer and Carrier accepted the accident as compensable and provided Claimant with medical treatment and disability benefits. Claimant subsequently filed a claim seeking, among other things, a correct determination of her average weekly wage (AWW) and corresponding compensation rate, temporary total disability benefits (TTD), permanent total disability benefits (PTD), and supplemental benefits. On December 14, 1989, the Florida Retirement System approved Claimant's claim for disability retirement in-line-of-duty benefits. On December 3, 1990, Employer and Carrier filed a form accepting Claimant as PTD effective November 20, 1990.
After final hearing, the judge ordered that Employer and Carrier pay TTD and PTD benefits for certain periods in addition to supplemental benefits from March 2, 1990, penalties, interest, and costs. The judge found that Claimant reached MMI on March 2, 1990, and granted the claim for increase in AWW to include, among other things, the value of accrued annual leave, in-line-of-duty disability benefits, and uniforms (smocks).
Employer and Carrier raise four issues on appeal. First, they contend that in determining Claimant's AWW, the judge erred in failing to apply subsection 440.14(1)(a), Florida Statutes (Supp.1988). Although Claimant worked less than 90% of her customary full time hours during the 13-week period immediately preceding the accident, she earned wages and was paid for more than 90% of her full time hours through the use of accrued leave time during the 13-week period. They also argue it was error to include accrued annual leave in AWW because those benefits were not vested at the time of the accident and "double dipping" results when the judge includes in AWW accrued leave earned during the 13 weeks immediately preceding the accident and also annual leave paid during that period.
We hold, as did the judge below, that subsection 440.14(1)(a) is inapplicable to the facts in this case. That subsection provides:
If the injured employee has worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the injury, his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the 13 weeks. As used in this paragraph, the term "substantially the whole of 13 weeks" shall be deemed to mean and refer to a constructive period of 13 weeks as a whole, which shall be defined as a consecutive period of 91 days, and the term "during substantially the whole of 13 weeks" shall be deemed to mean during not less than 90 percent of the total customary full-time hours of employment within such period considered as a whole.
(Emphasis added.) The emphasized language refers to 90% of the total customary full-time hours, and it is undisputed that Claimant worked less than 90% of her total customary full-time hours of employment during the 13 weeks immediately preceding the accident. Hence, the judge properly found that subsection (1)(a) is inapplicable. There has been no challenge to the judge's finding that neither subsection (1)(b) nor (1)(c) applies. Accordingly, the judge properly used a base rate of $175.60 (40 hours × *506 $4.39 hourly rate) for AWW purposes, plus includable fringe benefits. § 440.14(1)(d), Fla. Stat. (1987) ("If any of the foregoing methods cannot reasonably and fairly be applied, the full-time weekly wages of the injured employee shall be used.") See Lavin v. Alton Box Bd. Co., 431 So.2d 202 (Fla. 1st DCA 1983).
We also reject the argument that it was error to include Claimant's accrued annual leave in calculating AWW. We have now held that leave programs, because they represent valuable consideration over and above the hourly wage, fit within the broad definition of "income" under section 440.02(23) of the workers' compensation statute. University of Florida v. Bowens, 677 So.2d 942 (Fla. 1st DCA 1996); Dubois Farms, Inc. v. Paul, 566 So.2d 923 (Fla. 1st DCA 1990). It need only be determined that the Claimant's right to the benefit had vested prior to the accident for it to be included in the calculation of AWW. Bowens; City of Daytona Beach v. Amsel, 585 So.2d 1044 (Fla. 1st DCA 1991). The record contains competent, substantial evidence to support the judge's finding that claimant's right to accrued leave had vested during the 13-week period immediately preceding the accident. Employer and Carrier do not challenge these findings:
... For this benefit, only six months of employment is required before an employee's rights become vested. Since the claimant met this condition, there is a component of AWW attributable to annual leave. Page 16 of the Handbook indicates that employees earn 4 hours biweekly, or 2 hours per week, in annual leave. For Ms. Collins' pay rate of $4.39 per week, this means an increase in the AWW of $8.78 attributable to annual leave....
(Emphasis added.)
Employer and Carrier next contend it was error to include in AWW Employer's contribution to the retirement program for in-line-of-duty disability benefits. They argue that the in-line-of-duty disability benefit was not vested because Claimant has less than ten (10) years of service and her application had not been approved by the State retirement office during the 13-week period prior to the accident. They also argue that the judge erred in using the sum of $5.85 to represent Employer's contribution for this benefit because the evidence indicates that a portion of this sum is allocated to the cost of operating the Florida Retirement System which provides several different benefits in addition to in-line-of-duty disability benefits for which Claimant may not be vested.
We find no error in including $5.85 per week as the portion of Employer's contribution to the retirement system as the actuary testified that this amount is properly allocated to provide in-line-of-duty disability benefits. This benefit is governed by subsection 121.091(4)(a), which provides in pertinent part:
A member who becomes totally and permanently disabled, as defined in paragraph (b), after completing 5 years of creditable service, or a member who becomes totally and permanently disabled in the line of duty regardless of service, shall be entitled to a monthly disability benefit....
(Emphasis added.) Thus, regardless of her years of service, Claimant's right to this benefit had vested because she became totally disabled in the line of duty. Cf. City of Tampa v. Bartley, 413 So.2d 1280 (Fla. 1st DCA 1982). We also find that Employer and Carrier have failed to demonstrate reversible error as to the amount included in AWW for this benefit based on the testimony of Gibney, a state retirement actuary. Employer and Carrier did not prove at the hearing that any portion of the $5.85 was allocable only to some other non-vested benefit. The actuary's testimony showed that this full amount was necessary to provide the in-line-of-duty disability benefit even though it included unallocated costs for administering the retirement system that provides this benefit.
Employer and Carrier also challenge the finding that Claimant reached MMI on March 2, 1990. We affirm on this point. The judge found that Dr. Chidgey offered testimony that could support an MMI date during the period from April 1989 through September 1990, and the most reasonable interpretation of the doctor's testimony is that Claimant reached MMI on March 2, 1990, the day the doctor last provided treatment. See Carruth v. Allied Products Co., 452 So.2d 634 (Fla. 1st DCA 1984).
*507 Finally, Employer and Carrier contend that the judge erred in adding the value of employer-provided smocks to Claimant's AWW, arguing that the smocks are aprons rather than uniforms, and there was no evidence that five replacement smocks were provided each year. We affirm this issue because the testimony of Employer's representative indicates that the smocks were used as uniforms and were treated as such by the Employer. Competent, substantial evidence supports the amount included in AWW for the value of the smocks.
On cross appeal, Claimant contends that the judge erred in failing to include in AWW the value of sick leave she had accrued during the 13-week period prior to the accident. Claimant argues that the sick leave was vested because, even with the limitation permitting cash payments for accrued sick leave upon death, disability, or termination of employment only if certain conditions were satisfied, the employment contract gave her a present right to sick leave that accrued prior to the accident. She argues that she had the right to use sick leave after the accident to keep her at full salary until that leave was exhausted.
We hold that the value of sick leave Claimant accrued during the 13-week period immediately preceding the accident should have been included in AWW. Like annual leave, sick leave is a valuable consideration Claimant receives from Employer in addition to the wages paid to Claimant as a condition of employment, and so constitutes "income" as broadly defined under section 440.02(23). Bowens, 677 So.2d at 943-44; Dubois Farms, 566 So.2d at 925-26. Claimant's Employee Handbook provides in pertinent part with respect to sick leave:
You begin earning sick leave from the time you are first employed. It is also credited to you on the last day of each pay period and, if you need it, you are eligible to request the amount that has been credited to you.

Full-time employees earn 4 hours each biweekly pay period.... There is NO LIMIT on the amount of sick leave you may accrue.
Should you separate from University employment because of retirement, termination in good standing, or death, after you have completed at least 10 years of creditable service, you will be paid for part of your unused sick leave credits at the rate of 1/8 of unused credits earned prior to October 1, 1993, with no limit plus ¼ of credits earned after October 1, 1993....
(Emphasis added.)
To the extent that this sick leave provision was fixed by the employment contract and entitled Claimant to continued compensation for lost time from work due to illness, it provided her with a vested right. Thus, its value should be included in AWW. City of Clearwater and Gallagher Bassett Insurance Services, Inc., v. Kohout, 678 So.2d 487 (Fla. 1st DCA 1996); Sagar v. University of Florida, 652 So.2d 469 (Fla. 1st DCA 1995); City of Daytona Beach, 585 So.2d at 1047.
The remaining issue is how to determine the value of accrued sick leave under these circumstances. The amount to be included in AWW is the cost to the employer to provide this benefit. The judge placed a weekly value of $8.78 on this benefit by multiplying Claimant's rate of pay ($4.39) times the number of hours of leave accrued each bi-weekly pay period (4), and then dividing the product by 2. However, this method is improper for determining the value of the sick leave benefits in this case because Claimant lacks ten years of creditable service and is not entitled to receive cash payment for her accumulated sick leave when she dies, retires, or terminates employment in good standing. Claimant's sick leave benefits should be treated similar to an indemnity insurance premium paid by Employer since the benefits have an economic value to Claimant and a cost to Employer. Accordingly, we reverse on this issue and remand for a determination of the cost of this benefit. The JCC may receive additional evidence.
AFFIRMED in part, REVERSED in part, and REMANDED.
BARFIELD, C.J., and KAHN and DAVIS JJ., concur.