Patricia A. SCHELLY, Petitioner,

v.

The INDUSTRIAL CLAIM APPEALS OFFICE OF THE STATE OF COLORADO; Director, Department of Labor & Employment, Division of Worker's Compensation; King Soopers, Inc.; and the Subsequent Injury Fund, Respondents.

No. 97CA0775.

Colorado Court of Appeals,
Div. A.

Dec. 26, 1997.

Rehearing Denied Jan. 29, 1998.

Certiorari Denied July 27, 1998.

Dwyer, Huddleson & Ray, P.C., Stephen J. Jouard, Fort Collins, for Petitioner.

Glasman, Jaynes, McBride & Musgrave, L.L.P., Ronald C. Jaynes, Art M. Lee, Denver, for Respondent King Soopers, Inc.

No Appearance for Respondents Subsequent Injury Fund, Department of Labor & Employment, Division of Worker's Compensation, and the Industrial Claim Appeals Office.

Opinion by Judge PIERCE*.

The sole issue in this workers' compensation case is whether, under § 8–40–201(19)(b), C.R.S.1997, the cost of Medicare insurance benefits is included in an injured claimant's average weekly wage once the continuation of the employer's group health insurance plan is terminated. We conclude that it is and, therefore, affirm the decision of the Industrial Claim Appeals Office.

This matter was decided by the Administrative Law Judge (ALJ) on stipulated facts. Patricia A. Schelly (claimant) sustained an industrial injury and an occupational disease while working for King Soopers, Inc. (employer). Liability for the resulting permanent total disability (PTD) was apportioned between employer and the Subsequent Injury Fund.

Claimant's average weekly wage, which is a factor in calculating PTD benefits, *see* §§ 8–42–102(1) and 8–42–111(1), C.R.S.1997, was initially determined to be $206.07. When claimant chose to continue her employer-provided health insurance pursuant to the Consolidated Omnibus Budget Reconciliation Act (COBRA), 42 U.S.C. § 300bb–1, et seq. (1994), her average weekly wage increased to $242.27 to reflect the cost of continuing those benefits. However, the COBRA continuation period eventually expired, and claimant lost her right to continue the employer-provided benefits.

The cost of continuing a policy with the same coverage and deductible increased from $156.84 per month under COBRA to $834 per month for an individual plan. Employer initially agreed to increase claimant's average weekly wage to $398.53 to reflect the increased cost of purchasing individual coverage. However, when claimant failed to purchase any individual coverage, employer reduced her average weekly wage to the first amount, $206.07. In the interim, claimant became entitled to coverage under Medicare, a federal program enacted to furnish health insurance to the elderly and disabled. Portions of the Medicare program are funded by premium payments by the enrollees, while the remainder is funded by the federal government through taxes assessed equally on employees and their employers. *See* Federal Insurance Contributions Act (FICA), 26 U.S.C. § 3111(b)(1994); *Salazar v. Brown*, 940 F.Supp. 160 (W.D.Mich.1996); *Miller v. Heckler*, 601 F.Supp. 1471 (E.D.Texas 1985). Upon enrollment, claimant paid a $46.10 per month premium for her Medicare coverage.

Rejecting employer's argument to the contrary, the ALJ concluded that § 8–40–201(19)(b) does not require a claimant actually to purchase health insurance in order to have the value of such insurance included in the calculation of the average weekly wage. Thus, the ALJ determined that claimant was entitled to PTD benefits based on the higher average weekly wage of $398.53. However, the ALJ made no findings concerning how claimant's enrollment in Medicare affected the calculation of her average weekly wage.

The Panel affirmed the decision to include in the average weekly wage the value of health insurance even when coverage is not purchased. The Panel concluded that once coverage is purchased, however, the average weekly wage must be adjusted to reflect the actual cost of such coverage. Thus, the Panel held that claimant's average weekly wage was $398.53 for the one-year period during which she could qualify for neither employer's plan nor Medicare, but was reduced to $216.71 once she became eligible for and purchased Medicare coverage.

I.

■ Claimant contends that, since it was her FICA payroll contributions which entitled her to purchase Medicare, her purchase of such coverage should not affect the calculation of her average weekly wage. She argues that her wages should include the cost of employer-paid health care based on the value provided to her in exchange for services rendered at the time of the injury. We disagree.

A claimant's average weekly wage is determined by reference to § 8–40–201(19)(b),

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.1997.

which provides that: "The term 'wages' shall include the amount of the employee's cost of continuing the employer's group health insurance plan and, upon termination of the continuation, the employee's cost of conversion to a similar or lesser insurance plan...."

This provision was first enacted in 1989. *See* Colo. Sess. Laws 1989, ch. 67, § 8–47–101(2) at 411; *Meeker v. Provenant Health Partners,* 929 P.2d 26 (Colo.App.1996). It codified prior case law decided under a broader predecessor statute that included in the term "wages" "the reasonable value of board, rent, housing, lodging, or any other similar advantages received from the employer." Colo. Sess. Laws 1975, ch. 71, § 8–47–101(2), at 295.

Before the statute was amended in 1989, two divisions of this court had held that, because health insurance had a present value, that value was required to be considered as a part of the employee's wages. *See State Compensation Insurance Authority v. Smith,* 768 P.2d 1256 (Colo.App.1988); *Murphy v. Ampex Corp.,* 703 P.2d 632 (Colo.App. 1985).

It is true that "wages" are normally computed by determining the "money rate" at which services are compensated under the contract for hire in force at the time of the injury. Sections 8–40–201(19)(a) and 8–42–102(2), C.R.S.1997; *Coates, Reid & Waldron v. Vigil,* 856 P.2d 850 (Colo.1993). However, § 8–40–201(19)(b) limits this definition of "wages" when the issue involves certain enumerated fringe benefits that have been paid by the employer. The conversion provision for health insurance unambiguously states that, once the continuation of the employer's group health insurance terminates, "the employee's cost of conversion to a similar or lesser insurance plan" is included in the average weekly wage. Section 8–40–201(19)(b).

If we adopted claimant's position, we would render the conversion provision in § 8–40–201(19)(b) a nullity. This we cannot do. *See Snyder Oil Co. v. Embree,* 862 P.2d 259 (Colo.1993)(statutory terms should be given effect according to their plain and ordinary meaning); *Griffin v. S.W. Devanney & Co.,* 775 P.2d 555 (Colo.1989)(where statutory language is clear and unambiguous, statute should be applied as written).

If the General Assembly had intended to include in the average weekly wage the amount the employer paid for health insurance at the time of the injury, the statute would not have needed amendment, since the cases decided prior to the 1989 amendments included in wages the entire value of the cost of the employer-provided insurance. *See State Compensation Insurance Authority v. Smith, supra; Murphy v. Ampex Corp., supra.* Similarly, if the intent had been to include the cost of replacing the claimant's health insurance with coverage similar to that provided by employer, then the phrase "or lesser plan" would not have been used.

Instead, the statute provides that it is the cost to claimant of converting to a similar or lesser plan, not the employer's cost of health insurance at the time of the injury, that is to be included in the average weekly wage. There is no provision excluding Medicare from the phrase "similar or lesser plan," and we will not read one into the statute. *See Kraus v. Artcraft Sign Co.,* 710 P.2d 480 (Colo.1985). Accordingly, claimant's cost for conversion to Medicare was properly included in her average weekly wage pursuant to § 8–40–201(19)(b).

Contrary to claimant's related assertion, the inclusion of the cost of the Medicare premium in her average weekly wage does not create a windfall for employer. It is irrelevant that employer benefits from claimant's contribution to the cost of Medicare through her FICA payments and from her ability to purchase Medicare coverage at a lower cost than employer paid for group coverage. As we understand § 8–40–201(19)(b), the General Assembly was only seeking to insure that a disabled claimant would have access to funds for the purchase of "similar or lesser" health insurance regardless of whether the cost was more or less than the cost of employer-provided insurance.

## II.

Employer contends that the cost of conversion to a similar or lesser plan should

not be included in the average weekly wage where the employee does not actually purchase such similar or lesser health insurance. However, instead of filing a notice of cross-appeal, employer raised this issue only in its answer brief, and therefore, we do not address it. *See Beatrice Foods Co. v. Padilla,* 747 P.2d 685 (Colo.App.1987).

The order of the Panel is affirmed.

RULAND and ERICKSON**, JJ., concur.

---

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1997.