**HUMANE SOCIETY OF The PIKES PEAK REGION and Colorado Compensation Insurance Authority, Petitioners,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Teresa L. Osinski, Respondents.**

No. 00CA0968.

Colorado Court of Appeals, Div. II.

April 26, 2001.

Laurie A. Schoder, Denver, CO, for Petitioners.

No Appearance for Respondent The Industrial Claim Appeals Office.

Steven U. Mullens, P.C., William C. Jolliffe, Andrew C. Gorgey, Colorado Springs, CO, for Respondent Teresa L. Osinski.

Opinion by Judge PLANK.

This workers' compensation case concerns the calculation of a claimant's average weekly wage (AWW) after the claimant is terminated from employment and the employer discontinues its partial funding of group health insurance. The primary issue is whether the amount of only the partial premium the employer previously paid for health insurance should be included in the AWW, or whether the portion of the premium previously paid by the claimant should also be included. We conclude that the AWW should include the amounts contributed by both the employer and the claimant. Therefore, we affirm the order of the Industrial Claim Appeals Office (Panel) that calculated the AWW using the entire amount of the health insurance premium, which, during employment, had been jointly funded by claimant, Teresa L. Osinski, and her employer, Humane Society of the Pikes Peak Region.

The facts are undisputed. During claimant's employment, employer provided claimant with group medical insurance. The monthly premium for an individual policy was $124.26, of which employer paid $104.74 and claimant paid $19.52. Claimant also paid $104.74 for dependent coverage, for a total monthly premium of $229. Dental insurance for claimant and her family was also provided, of which employer paid $47.59 per month and claimant funded the remaining $32.56.

Claimant suffered an admitted injury in November 1997. When modified employment was no longer available, her employment was terminated. At that time, the cost of continuing health insurance coverage remained $229 per month, and dental coverage remained $80.15. Employer and its insurer, Colorado Compensation Insurance Authority (collectively CCIA), admitted liability for temporary disability benefits. However, because of the disagreement as to how much of the insurance premium would be included in the AWW, the parties were unable to agree on the rate at which the benefits would be paid under §§ 8–42–102(1)(AWW is basis for compensation payments), 8–42–105(1), and 8–42–106(1), (setting forth formula for computing temporary total and temporary partial disability benefits), C.R.S.2000.

Rejecting the argument that only that portion of the premium paid by employer may be included in claimant's AWW, the Administrative Law Judge (ALJ) included the full $229 per month, or $52.85 per week, for health insurance. An additional amount of $18.50 per week was included in the AWW for dental insurance. The Panel affirmed the

decision to include these amounts in the AWW.

## I.

CCIA contends that it should not be required to make a greater contribution to claimant's insurance after termination than it did during her period of employment. Thus, it argues that claimant's AWW should include only the amount of the premium that employer paid, rather than also including the amount of her personal contribution prior to termination. We disagree.

Section 8–40–201(19)(b), C.R.S.2000, provides that, "the term 'wages' shall include the amount of the employee's cost of continuing the employer's group health insurance plan and, upon termination of the continuation, the employee's cost of conversion to a similar or lesser insurance plan...."

Statutes must be construed in such manner as to further the legislative intent with which they were enacted. *Salazar v. Industrial Claim Appeals Office*, 10 P.3d 666 (Colo.App.2000). To discern the intent of the General Assembly, we must first examine the language of the statute. *United Airlines, Inc. v. Industrial Claim Appeals Office*, 993 P.2d 1152 (Colo.2000). In so doing, words and phrases should be given their plain and ordinary meaning, unless the result is absurd. *Dover Elevator Co. v. Industrial Claim Appeals Office*, 961 P.2d 1141 (Colo. App.1998). If the statutory language is clear and unambiguous, the statute must be applied as written, and it is unnecessary to resort to other rules of statutory construction. *Grogan v. Lutheran Medical Center, Inc.*, 950 P.2d 690 (Colo.App.1997).

Here, we agree with the Panel that the plain and ordinary meaning of § 8–40–201(19)(b) is clear and unambiguous. *See Miller v. Industrial Claim Appeals Office*, 985 P.2d 94 (Colo.App.1999) (giving due deference to the Panel's interpretation of a statute because it is the agency charged with its enforcement). The statute expressly provides that where the employer continues to provide group health insurance coverage, the "employee's cost of continuing the employer's group health insurance plan" is included in

the AWW, and when the coverage is terminated the employee's "cost of conversion to a similar or lesser" plan is included. Accordingly, the statute expressly directs the ALJ to include the "employee's cost" of the health insurance premium in the AWW, regardless of the cost to the employer.

This interpretation is consistent with *Schelly v. Industrial Claim Appeals Office*, 961 P.2d 547 (Colo.App.1997), where the cost to the claimant controlled. In that case, the claimant was able to procure similar coverage at a lesser cost than the employer had paid for the group insurance plan. A division of this court rejected the claimant's argument that the AWW included the amount the employer paid for health insurance at the time of the injury. Instead, the division found that the statute provides that it is the cost to the claimant of converting to a similar or lesser plan, not the employer's cost of health insurance at the time of the injury, that is to be included in the AWW.

Without question, "the employee's cost of continuing the employer's group health insurance plan" is broad and could encompass several factual circumstances favorable to either a claimant, as here, or an employer, as in *Schelly*. However, legislating with a broad stroke does not necessarily equate with ambiguity. *See B & B Livery v. Riehl*, 960 P.2d 134 (Colo.1998) (use of broad language did not create ambiguity *per se* ). And, if our interpretation of the clear language used in the statute does not correspond to the General Assembly's intent, it is for that body, not this court, to rewrite it. *See Dove Valley Business Park Associates, Ltd. v. Board of County Commissioners*, 923 P.2d 242 (Colo.App.1995), *aff'd*, 945 P.2d 395 (Colo.1997).

We recognize that this construction arguably creates a potential windfall for claimant, since her portion of the insurance premium was not part of the amount she was recompensed for her services. *See* § 8–40–201(19)(a), C.R.S.2000. However, since a windfall could favor either party, as demonstrated by the comparison between this case and *Schelly*, we are not persuaded by this argument. Further, because claimant re-

ceives only two-thirds of the AWW as compensation, the "windfall" here does not replace the entire loss.

■ Furthermore, the General Assembly enacted § 8–40–201(19)(b) to ensure that the claimant has sufficient funds available to purchase health insurance, regardless of whether the cost is more or less than the employer's cost of providing similar insurance. *See Schelly v. Industrial Claim Appeals Office, supra.* The legislature apparently determined that this goal could not be achieved unless the claimant's AWW and resulting temporary disability rate are increased to reflect the claimant's cost of obtaining similar or lesser insurance. Indeed, when the employer stops insurance contributions, the claimant may lose the advantage of group rates and be forced to purchase insurance at higher individual rates. To some extent, the statute ameliorates this consequence.

We also note that prior to 1989 the term "wages" included the reasonable value of board, rent, housing, lodging, or any other similar employer-paid fringe benefits. In 1989, § 8–40–201(19)(b) was amended to narrow the definition of "wages" to exclude "any similar advantage or fringe benefit not specifically enumerated." *See City of Lamar v. Koehn,* 968 P.2d 164 (Colo.App.1998). Therefore, even though the legislature may have increased the relative value of employer-paid health insurance, it also decreased the potential AWW by excluding certain fringe benefits from consideration. *See Meeker v. Provenant Health Partners,* 929 P.2d 26 (Colo.App.1996). Consequently, the potential windfall to the claimant was legislatively offset by the elimination of other fringe benefits includable in the AWW.

Although CCIA argues that *State Compensation Insurance Authority v. Smith,* 768 P.2d 1256 (Colo.App.1988), mandates a different result, reliance on that case is misplaced. That case was decided under the predecessor statute, in which the wages were determined by the value of fringe benefits, and not the claimant's actual cost of conversion. *See Schelly v. Industrial Claim Appeals Office, supra.* The difference in language requires a difference in outcome.

We recognize that *Schelly* did not involve the exact circumstances as here, since there was no indication in that case that the claimant paid for part of the premium. Here, claimant paid more than half of the insurance premium to cover both herself and her dependents. However, that difference does not lead us to change the result, because, had the legislature intended to exclude the cost of the employee's personal contribution from the calculation of the AWW, or to exclude dependent coverage, it could have done so by adopting language that only the cost of the employer's contribution, or only the cost of the employee's individual health insurance coverage, is included. *See Nelson v. Industrial Claim Appeals Office,* 981 P.2d 210 (Colo.App.1998). It did not do so, and we may not read a nonexistent provision into the statute. *See Kraus v. Artcraft Sign Co.,* 710 P.2d 480 (Colo.1985).

Therefore, insofar as employer paid for only a portion of claimant's coverage, yet allowed her to purchase additional coverage, the statute requires that the "cost of conversion" include the total cost of all the coverage she purchased.

## II.

■ CCIA also contends that claimant must establish that she has actually obtained continuing dental coverage before she is entitled to reimbursement by way of an increased AWW. We disagree.

We note that the record contains no evidence concerning whether claimant has or has not purchased continuing dental insurance. However, even if it did, the statute does not require proof that the claimant has actually purchased coverage. When and where to purchase coverage is a decision for the claimant. The statute merely seeks to ensure that the claimant will have funds available to make the purchase.

The order of the Panel is affirmed.

JONES and CASEBOLT, JJ., concur.