**Carnell RAY, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado, New World Van Lines of Colorado, and Liberty Mutual Fire Insurance, Respondents.**

No. 04CA2261.

Colorado Court of Appeals, Div. I.

July 14, 2005.

Rehearing Denied Aug. 18, 2005.*

Certiorari Granted Dec. 5, 2005.

* Graham, J., would GRANT.

Bisset Law Firm, Jennifer Bisset, Denver, Colorado, for Petitioner.

No Appearance for Respondent Industrial Claim Appeals Office.

Law Offices of Jonathan S. Robbins, David G. Kroll, Denver, Colorado, for Respondents New World Van Lines of Colorado and Liberty Mutual Fire Insurance.

HAWTHORNE, J.

Claimant, Carnell Ray, seeks review of a final order of the Industrial Claim Appeals Office (Panel) determining that the computation of his average weekly wage (AWW) should not include the cost of health insurance because he did not actually pay to continue coverage after his employment was terminated. We set the order aside and remand for further proceedings.

Claimant suffered serious head injuries in October 2001 as a result of a work-related automobile accident, and New World Van Lines of Colorado (employer) filed a general admission of liability for temporary total disability benefits. Claimant was terminated from his job in January 2002 and was notified that he could continue his employer's group health insurance coverage pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), 42 U.S.C. § 300bb–1, et seq. (2000), by paying $602.75 per month. Although claimant elected to continue coverage, he did not actually make the payment required to purchase coverage.

One issue addressed at a May 2004 hearing was claimant's contention that the AWW should include the cost of health insurance benefits under COBRA, even though he did not actually pay for them. The administrative law judge (ALJ) denied the request to include the cost of the COBRA benefits, and, on review, the Panel affirmed.

Claimant contends that the plain and ordinary meaning of § 8–40–201(19)(b), C.R.S.

2004, requires the ALJ to add the cost of health insurance to the determination of his AWW. We agree.

The AWW of an injured employee must be used as the basis for computing compensation payments. Section 8–42–102(1), C.R.S. 2004. AWW is to be calculated based upon the monthly, weekly, hourly, or other "wages" and remuneration which the injured employee was receiving at the time of the injury. Section 8–42–102(2), C.R.S.2004. Section 8–40–201(19)(b) provides:

> The term "wages" shall include the amount of the employee's cost of continuing the employer's group health insurance plan and, upon termination of the continuation, the employee's cost of conversion to a similar or lesser insurance plan, and gratuities reported to the federal internal revenue service by or for the worker for purposes of filing federal income tax returns and the reasonable value of board, rent, housing, and lodging received from the employer, the reasonable value of which shall be fixed and determined from the facts by the division in each particular case, but shall not include any similar advantage or fringe benefit not specifically enumerated in this subsection (19). If, after the injury, the employer continues to pay any advantage or fringe benefit specifically enumerated in this subsection (19), including the cost of health insurance coverage or the cost of the conversion of such health insurance coverage, such advantage or benefit shall not be included in the determination of the employee's wages so long as the employer continues to make such payment.

■ Thus, under the statute, the term "wages" includes "the amount of the employee's *cost* of continuing the employer's group health insurance plan and, upon termination of the continuation, the employee's *cost* of conversion to a similar or lesser insurance plan" (emphasis added). The express statutory language does not require proof that the claimant actually purchased the coverage.

■ The interpretation of a statute is a question of law subject to de novo review. *Hendricks v. People*, 10 P.3d 1231 (Colo. 2000). Although we "give considerable weight to an agency's interpretation of its own enabling statute," we vacate interpretations that are clearly erroneous, arbitrary, or otherwise not in accordance with the law. *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo.2004); *Colo. Dep't of Labor & Employment v. Esser*, 30 P.3d 189, 194 (Colo.2001).

■ Our primary task in construing a statute is to determine and give effect to the intent of the General Assembly. To discern legislative intent, we look primarily to the language of the statute itself, giving the words their plain and ordinary meaning. *Kern v. Gebhardt*, 746 P.2d 1340, 1344 (Colo. 1987). When the plain language of a statute is free from ambiguity, other rules of statutory construction are unnecessary. *Kinder v. Indus. Claim Appeals Office*, 976 P.2d 295 (Colo.App.1998).

■ The Workers' Compensation Act is intended to be "remedial and beneficent in purpose, and should be liberally construed" in order to accomplish the General Assembly's goal, inter alia, of assuring the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers. *Davison v. Indus. Claim Appeals Office, supra*, 84 P.3d at 1029 (quoting *Colo. Counties, Inc. v. Davis*, 801 P.2d 10–11 (Colo.App.1990), *aff'd sub nom. County Workers Comp. Pool v. Davis*, 817 P.2d 521 (Colo.1991)).

■ The term "cost" is not defined in the statute. In the absence of a definition by the General Assembly, the words and phrases used are to be construed according to their generally accepted meaning. *Allstate Prods. Co. v. Colo. Dep't of Labor & Employment*, 782 P.2d 880, 882 (Colo.App.1989). Cost is commonly defined as having several meanings. As relevant here, cost can mean "the amount or equivalent paid or given or charged or engaged" for something bought or otherwise acquired or "to have a price of." *Webster's Third New International Dictionary* 515 (1986). Similarly, cost is defined as "the amount paid or charged for something; price or expenditure." *Black's Law Dictionary* 371 (8th ed.2004). As such, cost can mean either an amount actually paid or ex-

pended, or simply the stated charge or price for something. The plain meaning of the word "cost" does not require payment to have been made.

■ The statute was enacted to ensure that disabled claimants would have access to funds for the purchase of similar or lesser health insurance when the employer no longer pays part of the premium for health insurance. *Humane Soc'y v. Indus. Claim Appeals Office,* 26 P.3d 546 (Colo.App.2001); *Schelly v. Indus. Claim Appeals Office,* 961 P.2d 547 (Colo.App.1997). In *Humane Society,* a division of this court acknowledged that when an employer stops insurance contributions, the claimant "may lose the advantage of group rates and be forced to purchase insurance at higher individual rates." *Humane Soc'y, supra,* 26 P.3d at 549.

The legislative history of § 8–40–201(19)(b) reveals that the statute was intended to value health insurance as a part of an employee's wages once the employer stopped paying the premiums. A sponsoring senator explained that the relevant provision "adds the cost of health care if not continued by the employer." *See Midboe v. Indus. Claim Appeals Office,* 88 P.3d 643, 645 (Colo.App.2003) (quoting Hearings on H.B. 89–1322 before the Senate Committee on Business Affairs and Labor, 57th General Assembly, 1st Session (Mar. 15, 1989)(remarks of Senator Norton)).

The General Assembly did not qualify the word "cost" in any manner in § 8–40–201(19)(b). In the absence of any such qualifying language, employer's argument would require us to interpret the section in a manner that would be contrary to the intent of the legislature.

The division in *Humane Society, supra,* 26 P.3d at 549, expressly rejected the insurer's contention that a claimant must establish that she had actually obtained continuing dental coverage before she was entitled to reimbursement by way of increased AWW. The division held that whether the claimant had purchased continuing insurance was irrelevant because "the statute does not require proof that the claimant has actually purchased coverage." In interpreting § 8–40–201(19)(b) to reach its conclusion, the divi-

sion held, "When and where to purchase coverage is a decision for the claimant. The statute merely seeks to ensure that the claimant will have funds available to make the purchase." *Humane Soc'y, supra,* 26 P.3d at 549.

However, in *Midboe v. Industrial Claim Appeals Office, supra,* a division of this court construed the word "continuing" as used in § 8–40–201(19)(b) and held that the statute does not allow the inclusion of the employee's cost of the employer's group health insurance plan in the employee's AWW while the employee continues employment with the same employer. In *Midboe,* however, the claimant's employment had not been terminated, and the employer continued to pay a portion of the claimant's premium. Thus, the specific issue presented for review was whether, during continued employment, the amount the claimant pays as his or her share of the premium for group health and dental insurance coverage must be included in the calculation of AWW.

The *Midboe* division did not address the issue here, that is, whether an employee who has been terminated from employment following an injury is required to purchase a continuing policy and convert to an individual plan before the claimant is entitled to have the cost of continuing the employer's plan included in AWW. To the extent employer contends that *Midboe* should be interpreted to encompass this issue, or should be read to suggest a requirement that the employee actually purchase insurance coverage, we decline to do so and, instead, follow the division's specific holding in *Humane Society, supra,* 26 P.3d at 549, that "the statute does not require proof that the claimant has actually purchased coverage."

■ Thus, we conclude that the ALJ and the Panel improperly interpreted § 8–40–201(19)(b) to require that the AWW be increased only when the claimant has actually continued, converted, or replaced his or her health insurance.

Accordingly, the amount of claimant's cost of continuing employer's group health insurance plan, *see* § 10–16–108(1)(e)(II)(B), C.R.S.2004, must be included to determine

claimant's AWW. Likewise, at the expiration of the allowed term of continuing coverage, the amount of claimant's cost of conversion to a similar or lesser plan must be included.

The order of the Panel is set aside, and the case is remanded for further proceedings consistent with this opinion.

Judge MARQUEZ concurs.

Judge GRAHAM dissents.

Judge GRAHAM dissenting.

I respectfully dissent because I believe that § 8–40–201(19)(b), C.R.S.2004, requires that a claimant's average weekly wage (AWW) be increased only where the claimant has "continued" the employer's coverage at his own cost. That statute states that "[t]he term 'wages' shall include the amount of the employee's *cost of continuing* the employer's group health insurance plan and, *upon termination of the continuation*, the employee's cost of *conversion to* a similar or lesser insurance plan" (emphasis added). This language contemplates that the employee must continue the coverage, which necessarily assumes that the employee must actually purchase the coverage.

I reach this conclusion, in part, because of *Midboe v. Industrial Claim Appeals Office,* 88 P.3d 643 (Colo.App.2003), which concluded that the specialized terms "continuing" and "conversion" presuppose the actual payment for continued coverage:

> Based upon the specialized meaning of these terms, we construe § 8–40–201(19)(b) to mean that a claimant's AWW includes the cost of health insurance only when a claimant has "continued" the employer's coverage at his or her own cost pursuant to COBRA or § 10–16–108, and thereafter, when that coverage ends and the claimant has converted to other coverage.

*Midboe v. Industrial Claim Appeals Office, supra,* 88 P.3d at 646.

COBRA provisions permit an employee to convert a policy only if the employee has been continuously insured under a group policy or the group policy has been terminated. Section 10–16–108(1)(c)(I), C.R.S.2004. Be-cause these provisions are part of the same statutory scheme and relate to the same subject, they should be construed in pari materia with the AWW provisions. *See Colorado State Board of Medical Examiners v. Jorgensen,* 198 Colo. 275, 599 P.2d 869 (1979). I therefore find support in the CO-BRA provisions for the principle that an employee must actually continue and pay for coverage before the cost of that coverage may become a component of the AWW.

Finally, I rely upon the legislative declaration in § 8–40–102(1), C.R.S.2004, which states the intent that the Workers' Compensation Act of Colorado be interpreted so as to assure quick and efficient delivery of benefits "at a reasonable cost to employers." In calculating AWW, it seems more reasonable to base that wage upon real costs actually incurred by the employee. In my view, the most reasonable cost to the employer is the cost based upon actual paid coverage.

*Humane Society v. Industrial Claim Appeals Office,* 26 P.3d 546 (Colo.App.2001), relied upon by the majority for the proposition that cost means the list price as opposed to the paid price, is distinguishable. The division in that case only addressed the question of whether the AWW should combine the cost of health insurance paid by the employer with the claimant employee's personal contribution to the health insurance premium prior to termination.

In reaching the conclusion that the AWW should include both contributions, the division in *Humane Society* relied upon *Schelly v. Industrial Claim Appeals Office,* 961 P.2d 547 (Colo.App.1997), where the claimant converted her health insurance to Medicare benefits. The claimant in *Schelly* argued that her AWW should include the cost of the health care paid by her employer at the time of her injury, which cost was higher than the cost for her conversion to Medicare. The *Schelly* division rejected the claimant's argument and stated that § 8–40–201(19)(b) "provides that it is the *cost to claimant* of converting to a similar or lesser plan, not the employer's cost of health insurance at the time of the injury, that is to be included in the average weekly wage." *Schelly v. Indus-*

*trial Claim Appeals Office, supra,* 961 P.2d at 549 (emphasis added).

*Humane Society* and *Schelly* do not reject the proposition that the actual cost incurred by the claimant should be the component added to the AWW. Where the claimant chooses not to incur that cost (as in this case), the AWW should not be adjusted to include the hypothetical cost.