The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 27, 2020

## 2020COA131

**No. 19CA1783, *SkyWest v. ICAO* — Labor and Industry — Workers' Compensation — Scope of Employment — Personal Deviation — Limitation on Payments Due to Use of Controlled Substances**

In this workers' compensation case, a division of the court of appeals determines that the Industrial Claim Appeals Office (Panel) did not err by reversing the decision of an administrative law judge (ALJ) regarding whether a decedent had returned to the course and scope of employment from a personal deviation at the time of his fatal accident. The ALJ found that decedent's deviation from travel status had not ended because he was intoxicated and had neither returned to nor appeared to be en route to his hotel. But the Panel held, based upon the ALJ's factual findings, that decedent's deviation ended when he attempted to return to a coworker's hotel.

The division affirms the Panel's decision ruling the claim compensable.

The division also determines, as a matter of first impression, that preservation of a second blood sample is required to limit a claimant's benefits due to an injured worker's intoxication under section 8-42-112.5, C.R.S. 2019. As relevant, that statute imposes a 50% reduction in nonmedical benefits if the work-related accident resulted from the presence in the worker's system of a blood alcohol level exceeding 0.10 percent. Because a second sample of decedent's blood had not been preserved as mandated by section 8-42-112.5, the Panel determined that the employer could not take advantage of the 50% reduction in benefits. The division affirms this ruling as well.

Court of Appeals No. 19CA1783
Industrial Claim Appeals Office of the State of Colorado
WC No. 5-079-980

SkyWest Airlines, Inc. and Indemnity Insurance Company of North America,

Petitioners,

v.

Industrial Claim Appeals Office of the State of Colorado, Luis Ordonez Gamez, Alayan Ordonez, Evan Ordonez, minor child, and Elija Ordonez, minor child,

Respondents.

ORDER AFFIRMED

Division VII
Opinion by JUDGE BROWN
Fox and Rothenberg*, JJ., concur

Announced August 27, 2020

Lee & Brown LLC, Joshua D. Brown, William M. Sterck, Kristi M. Robarge, Denver, Colorado, for Petitioners SkyWest Airlines, Inc. and Indemnity Insurance Company of North America

No Appearance for Respondent Industrial Claim Appeals Office

The Sawaya Law Firm, Katherine McClure, Denver, for Respondents Luis Ordonez Gamez, Alayan Ordonez, Evan Ordonez, and Elija Ordonez

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1     In this workers' compensation case, we must determine whether the Industrial Claim Appeals Office (Panel) erred by reversing the decision of an administrative law judge (ALJ) regarding whether a decedent had returned to the course and scope of employment from a personal deviation at the time of his fatal accident.  The ALJ found that decedent's deviation from travel status had not ended because he was intoxicated and had neither returned to nor appeared to be en route to his hotel.  But the Panel concluded, based on the ALJ's factual findings, that decedent's deviation ended when he attempted to return to a coworker's hotel. We affirm the Panel's decision ruling the claim compensable.

¶ 2     We must also determine, as a matter of first impression, whether preservation of a second blood sample is required to limit a claimant's benefits due to an injured worker's intoxication under section 8-42-112.5, C.R.S. 2019.  As relevant here, that statute imposes a 50% reduction in nonmedical benefits if the work-related accident resulted from the presence in the worker's system of a blood alcohol level exceeding 0.10 percent.  Because a second sample of decedent's blood had not been preserved as mandated by section 8-42-112.5, the Panel determined that the employer could

not take advantage of the 50% reduction in benefits. We affirm this ruling as well.

## I. Background

¶ 3    Decedent, Luis Ordonez-Gamez, worked as a pilot for employer, SkyWest Airlines, Inc.[1] He lived in California with his wife and two young children. In January and February 2018, he came to Denver for flight training. While training in Denver, decedent stayed at the SpringHill Suites, located at the southwestern intersection of 68th Avenue and Tower Road.

¶ 4    On February 14, 2018, decedent and his simulator partner, Baylee Ladner, took the difficult Initial Maneuvers Validation test from 6 p.m. to 10 p.m. After successfully completing the test, decedent and Ladner had dinner and "a couple of beers" at a nearby restaurant to celebrate. From the restaurant, they headed to a different establishment to continue drinking and celebrating.

¶ 5    At approximately 2 a.m. on February 15, 2018, decedent and Ladner stopped drinking alcohol, left the establishment, and

---

[1] SkyWest's insurer, Indemnity Insurance Company of North America, is aligned with the SkyWest's interests in this case. Therefore, we refer to the SkyWest and the insurer collectively as "SkyWest."

returned to Ladner's hotel, the Fairfield Inn & Suites, located at the southwestern corner of 69th Avenue and Tower Road, one block north of and on the same side of Tower Road as the SpringHill Suites where decedent was staying. When they arrived at the Fairfield Inn, decedent approached the night desk attendant and asked her "to make his room key again because it wasn't working." The desk attendant informed decedent that the logo on his key referenced the SpringHill Suites and that he "wasn't at the right hotel." The desk attendant observed decedent "moving around a lot" and surmised he was intoxicated because "[h]e smelled like alcohol." After being told his room key would not work there, decedent proceeded to Ladner's room in the Fairfield Inn.

¶ 6     At about 5:30 a.m., decedent returned to the Fairfield Inn's front lobby and spoke with the same desk attendant. He again asked her for a new room key, and she reiterated that his key was for the SpringHill Suites "about two buildings over" from the Fairfield Inn. She testified that decedent still seemed inebriated and was struggling to put a lid on his coffee cup. The desk attendant turned to assist some other hotel guests and, after those guests left, she noticed that decedent "was gone."

3

¶ 7     A few minutes later, the desk attendant saw police lights outside. Decedent had left the Fairfield Inn, attempted to cross from the west side of Tower Road — where the Fairfield Inn, the SpringHill Suites, and SkyWest's training facility were located — to the east side, and had been struck by a vehicle traveling southbound on Tower Road. Decedent was transported to University of Colorado Hospital, where he received six units of blood and then had a blood sample taken which revealed a blood alcohol content (BAC) of 0.209 g/100ml. The parties stipulated that medical staff did not preserve a second blood sample. Decedent died later that morning at the hospital.

¶ 8     Decedent's widow, Alayan Ordonez, and children, Evan and Elija Ordonez (claimants) filed a claim for survivor benefits under the Workers' Compensation Act of Colorado (Act), sections 8-42-114 and -115, C.R.S. 2019. The matter proceeded to hearing before the ALJ in January 2019.

¶ 9     Based on the evidence, the ALJ found that

- decedent and Ladner "finished drinking" at approximately 2 a.m. on February 15, 2018;

- decedent was intoxicated when he was struck on Tower Road;

- because decedent was running away from his hotel and from SkyWest's training facility when he was struck, he was not returning to his hotel or to work; and

- no "persuasive evidence" supported claimants' contention that decedent was simply confused when he attempted to cross Tower Road.

Relying on these factual findings, the ALJ concluded that decedent "was in a personal deviation at the time of the accident due to hours of consuming alcohol" and had not returned to travel status within the course and scope of his employment. The ALJ "denied and dismissed" the claim, finding it noncompensable.

¶ 10    The Panel disagreed. It determined, based on the ALJ's factual findings, that "by the time decedent was involved in the collision, his personal deviation had ended." It noted that the ALJ found that decedent had stopped drinking about four hours before the accident, and that although he had not returned to his hotel room "he nevertheless had returned to lodging in Ladner's hotel room." The Panel rejected the ALJ's determination that because of

decedent's "high level of intoxication," he could not have been "within the course and scope [of his] . . . position as a commercial airline pilot." Citing *Wild West Radio, Inc. v. Industrial Claim Appeals Office*, 905 P.2d 6 (Colo. App. 1995), the Panel noted that intoxication alone does not preclude compensation.

¶ 11    Finally, the Panel ruled that, to the extent the ALJ admitted toxicology results establishing that decedent's BAC was 0.209 just before his death to reduce claimants' benefits under section 8-42-112.5, she erred. The Panel observed that, under the express language of section 8-42-112.5(1), a second blood sample "must be preserved." Because a second sample was not preserved, the toxicology results could not be used to reduce claimants' benefits under the statute.

## II.  Deviation from Travel Status

¶ 12    SkyWest first argues that the Panel was bound by the ALJ's factual findings, particularly the ALJ's determination that decedent's personal deviation had not yet ended when the accident occurred. By reaching a different conclusion, it contends, the Panel improperly disregarded these findings, reweighed the evidence, and drew its own inferences from the facts. We disagree.

## A. General Principles of Compensability

¶ 13    To receive workers' compensation benefits, an injured worker must establish, by a preponderance of the evidence, that he has sustained a compensable injury or death "proximately caused by an injury . . . arising out of and in the course of the employee's employment . . . ." § 8-41-301(1)(c), C.R.S. 2019; *see Faulkner v. Indus. Claim Appeals Office,* 12 P.3d 844, 846 (Colo. App. 2000). An injury "arises out of" employment when it has its origin in an employee's work-related functions and is sufficiently related to those functions to be considered part of the employee's employment contract. *Horodyskyj v. Karanian,* 32 P.3d 470, 475 (Colo. 2001). An injury occurs "in the course of" employment when it takes place within the time and place limits of the employment relationship and during an activity connected with the employee's job-related functions. *Id.*

## B. Law Governing Travel Status

¶ 14    Injuries occurring while an employee is away from home or work for a business purpose may arise out of and be within the course of employment and thus be covered under the Act. As relevant here, under the "travel status" doctrine, "if the employee's

job duties require travel[,] . . . that travel is considered to be a part of the job, and any injury occurring during such travel will be compensable." *Mountain W. Fabricators v. Madden*, 958 P.2d 482, 484 (Colo. App. 1997), *aff'd*, 977 P.2d 861 (Colo. 1999). And "if the employee is sent away from home for an extended period to attend upon the employer's business, the employee will be considered to be in the course and scope of employment during virtually all of such period." *Id.* (citing *Alexander Film Co. v. Indus. Comm'n*, 136 Colo. 486, 492-93, 319 P.2d 1074, 1078 (1957), which affirmed an award to an employee who died after being struck by a motor vehicle as he crossed the road separating the restaurant where he dined from his motel). The risks associated with the necessities of eating, sleeping, and ministering to personal needs away from home are considered incidental to and within the scope of a traveling employee's employment. *Phillips Contracting, Inc. v. Hirst*, 905 P.2d 9, 12 (Colo. App. 1995); *Staff Adm'rs, Inc. v. Indus. Claim Appeals Office*, 958 P.2d 509, 511 (Colo. App. 1997), *aff'd sub nom. Staff Adm'rs, Inc. v. Reynolds*, 977 P.2d 866 (Colo. 1999).

¶ 15    A traveling employee's injuries are not compensable, however, if the injury occurred while the employee was engaged in a

"personal deviation."  *See Hirst*, 905 P.2d at 11 ("An employee whose work requires travel away from the employer's premises is held to be within the course and scope of employment continuously during the trip, except when the employee makes a distinct departure on a personal errand."); *Wild W. Radio*, 905 P.2d at 8 ("Generally, workers' compensation coverage of an employee away from home at the direction of the employer does not extend to injuries which occur while the employee makes a distinct departure on a personal errand.").  When considering whether an employee was engaged in a personal deviation, "the issue is whether the activity giving rise to the injury constituted a deviation from employment so substantial as to remove it from the employment relationship."  *Hirst*, 905 P.2d at 12.  "However, when the employee's personal errand is concluded, the deviation ends and the employee is again covered for workers' compensation."  *Wild W. Radio*, 905 P.2d at 8.

¶ 16     Whether an injured employee was in "travel status" or on a "personal deviation" at the time of his injury is a question of fact the ALJ decides.  *See Staff Adm'rs, Inc.*, 958 P.2d at 511; *Wild W. Radio*, 905 P.2d at 8.  Although the burden of proof is on the employer to

show that the employee made a distinct departure from the scope of employment while on travel status, the burden of proof is on the claimant to show a return to the course and scope of employment. *Wild W. Radio*, 905 P.2d at 8.

## C. Standard of Review

¶ 17 We employ the same standard of review as the Panel. *Compare* § 8-43-307(8), C.R.S. 2019, *with* § 8-43-308, C.R.S. 2019; *see also Miller v. Indus. Claim Appeals Office*, 49 P.3d 334, 337 (Colo. App. 2001) ("The Panel and reviewing courts are bound to apply the substantial evidence test in determining whether the evidence supports the ALJ's findings of fact."); *Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411, 414 (Colo. App. 1995) ("[T]he evidentiary standard of proof applied by the ALJ is not the same as the *standard of review* applied by the Panel and reviewing courts in determining the correctness of the ALJ's order. By statute, both the Panel and reviewing courts must apply the substantial evidence test in determining whether the evidence supports the ALJ's findings of fact."). When an ALJ's findings of fact are supported by substantial evidence, we are bound by them, even when the evidence is conflicting and would have supported a contrary result. *See* § 8-43-

308; *Pacesetter Corp. v. Collett*, 33 P.3d 1230, 1234 (Colo. App. 2001), *superseded by statute as recognized by City of Brighton v. Rodriguez*, 2014 CO 7, ¶ 39 n.12. But we may set aside an ALJ's decision if, among other things, the "findings of fact do not support the order" or the order "is not supported by applicable law." § 8-43-308. Thus, if the ALJ misconstrued or misapplied the law, we may set the decision aside. *Paint Connection Plus v. Indus. Claim Appeals Office*, 240 P.3d 429, 431 (Colo. App. 2010). And we review de novo the application of law to undisputed facts. *Hire Quest, LLC v. Indus. Claim Appeals Office*, 264 P.3d 632, 635 (Colo. App. 2011).

## D. The Panel Properly Reversed the ALJ's Order Denying Benefits

¶ 18    There appears to be no dispute between the parties that decedent was in travel status while in Colorado or that he had engaged in a personal deviation. Rather, the dispute is whether decedent ended his deviation and returned to travel status before his fatal accident. The question we must answer is whether the law mandates an award of benefits based on the facts found by the ALJ. We conclude that it does.

¶ 19    In *Pat's Power Tongs, Inc. v. Miller*, 172 Colo. 541, 474 P.2d 613 (1970), the Colorado Supreme Court upheld the commission's

11

finding that the claimants sustained compensable injuries. The claimants were staying overnight in Denver while on a business trip. They sustained injuries in a motor vehicle accident while returning to their Denver hotel after a non-work-related dinner with friends. *Id.* at 542, 474 P.2d at 614. The commission ruled that the claimants' deviation ceased the moment they commenced their return to their lodging. *See id.* at 542-43, 474 P.2d at 614. The supreme court affirmed the commission's decision because the claimants "had concluded their personal activities of the evening, and . . . at the time they sustained their injuries they were proceeding toward their lodging quarters for the night." *Id.* at 543, 474 P.2d at 615 (citing *Mohawk Rubber Co. v. Cribbs*, 165 Colo. 526, 440 P.2d 785 (1968), which affirmed a commission finding that the decedent had returned to the scope of employment from a deviation when he died in a one-car accident heading in the direction of his home, even though he was intoxicated and it was unclear from where he was traveling).

¶ 20     The ALJ distinguished this case from *Pat's Power Tongs* because decedent was not "proceeding toward" his "lodging quarters" when he ran across Tower Road. *See id.* at 543, 474 P.2d

at 615. We are not convinced that this fact is dispositive. True, decedent was not en route to *his* hotel and was, undisputedly, heading *away from* his hotel at the time of the accident. But, the ALJ also found, with ample record support, that before the accident (1) decedent and Ladner had stopped drinking, left the establishment where they were celebrating, and returned to Ladner's hotel; (2) decedent proceeded to Ladner's room after he was unable to obtain a room key from the night desk attendant; and (3) decedent and Ladner did not consume more alcohol or otherwise continue their celebratory activities upon reaching Ladner's room. To the contrary, the uncontroverted evidence suggests the pair talked for a while and then fell asleep. In other words, decedent had already returned to "lodging quarters for the night" (even if it was his colleague's room). The accident happened hours later.

¶ 21   We agree with the Panel that, under *Pat's Power Tongs*, these findings mandate an award of benefits to claimants. Although when a deviation ends is generally a question of fact for the ALJ's determination, *see Wild W. Radio*, 905 P.2d at 8, that determination must be made within the bounds of existing case law. Applying

*Pat's Power Tongs* to the facts of this case, we conclude that the decedent's deviation ended before his fatal accident.

¶ 22    SkyWest also contends that the ALJ correctly found that decedent continued in his "personal deviation at the time of the accident, due to hours of consuming alcohol." But more than twenty years ago, a division of this court rejected an employer's contention that its employee could not have ended her deviation and returned to the scope of employment "until she attained sobriety." *Wild W. Radio*, 905 P.2d at 8. The division observed that "the General Assembly has not evidenced an intent to preclude all compensation for excessive levels of intoxication." *Id.*

¶ 23    Despite multiple subsequent amendments to the Act, the General Assembly has not incorporated a provision barring an intoxicated worker from receiving benefits. And we lack authority to read such a provision into the Act. *See Kraus v. Artcraft Sign Co.*, 710 P.2d 480, 482 (Colo. 1985) ("We have uniformly held that a court should not read nonexistent provisions into the . . . Act.").

¶ 24    We acknowledge that a division of this court held that "in some circumstances the act of consuming alcohol, by itself, can constitute a personal deviation sufficient to remove the claimant

14

from the scope of employment." *Pacesetter Corp.*, 33 P.3d at 1234. But, notwithstanding the broad statement quoted, *Pacesetter Corp.* is distinguishable on its facts because, "[b]ased upon the extent of claimant's intoxication and the circumstances of the accident," which included the claimant driving ninety miles per hour at the time of the one-car accident, "the ALJ inferred that claimant continued to drink after he left the motel." *Id.* Based on this inference, the ALJ determined, and the division agreed, that the claimant failed to prove he had returned to the scope of his employment at the time of the accident. *Id.*

¶ 25    Here, in contrast, the ALJ specifically found that decedent had "finished drinking at approximately 2:00 a.m." before returning to Ladner's hotel; the ALJ did not find that decedent continued imbibing after he left Ladner's hotel room hours later and tried to cross the street on foot.

¶ 26    We therefore affirm the Panel's decision reversing the ALJ's order denying and dismissing claimants' claim for benefits.

### III.  Admissibility of Toxicology Results under Section 8-42-112.5

¶ 27    SkyWest contends that the Panel erred by (1) addressing the admissibility of decedent's toxicology results under section 8-42-

112.5 even though the ALJ did not address the issue in her final order; and (2) concluding that an employer may only invoke the 50% intoxication penalty if there is a second blood sample preserved for review. We disagree.

### A. The Panel Had Authority to Address the Issue

¶ 28     We first reject SkyWest's contention that the Panel lacked authority to determine the admissibility of the toxicology results under section 8-42-112.5 because the ALJ did not specifically address it in her final written order. Before the hearing, a prehearing ALJ (PALJ) granted claimants' motion to redact the toxicology results from the adjuster's notes, the medical records, and the medical examiner's report. The PALJ ruled that a second blood sample — which the parties stipulated had not been preserved — was "a prerequisite to reduce compensation under [section] 8-42-112.5." With no second sample, the PALJ ruled, the toxicology results were inadmissible for the purpose of imposing the 50% statutory penalty.

¶ 29     From the bench at the start of the hearing, the ALJ reversed and struck the PALJ's evidentiary ruling. Thus, the ALJ ruled on the evidence's admissibility, which ruling is subject to review. The

16

ALJ did not address the issue in her later written order because it was unnecessary for her to do so. Having found the claim noncompensable, it was irrelevant whether benefits should be reduced under the statute. In contrast, the Panel determined that the claim was compensable based on the ALJ's factual findings. It therefore properly addressed the admissibility of the toxicology results to reduce benefits under section 8-42-112.5.

### B. The Toxicology Results Were Inadmissible

¶ 30    Turning to the admissibility of the evidence, SkyWest contends that the toxicology results are admissible for purposes of reducing benefits under section 8-42-112.5 even if a second blood sample is unavailable. It argues that if the legislature "intended that intoxication cannot be proven under any circumstance without a second blood sample, [it] would have stated that in the statute." SkyWest acknowledges that without a second sample it was not entitled to a *presumption* of intoxication but contends it could still establish decedent's intoxication for purposes of the 50% reduction

in benefits with other medical and nonmedical evidence.[2]  We

disagree.

### 1.  Rules of Statutory Construction and Standard of Review

¶ 31     In analyzing a provision of the Act, "we interpret the statute according to its plain and ordinary meaning."  *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo. 2004).  "[W]e give effect to every word and render none superfluous because we 'do not presume that the legislature used language idly and with no intent that meaning should be given to its language.'"  *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008) (quoting *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo. 2005)).

¶ 32     We review statutory construction de novo.  *Ray v. Indus. Claim Appeals Office*, 124 P.3d 891, 893 (Colo. App. 2005), *aff'd*, 145 P.3d 661 (Colo. 2006).  Although we defer to the Panel's reasonable interpretations of the statute it administers, *Sanco Indus. v. Stefanski*, 147 P.3d 5, 8 (Colo. 2006), we are "not bound by the

---

[2] To be clear, we do not address whether, in the absence of a second sample, toxicology results nonetheless may be admitted for purposes other than a 50% reduction in benefits under section 8-42-112.5, C.R.S. 2019.

Panel's interpretation" or its earlier decisions, *United Airlines v.*

*Indus. Claim Appeals Office*, 2013 COA 48, ¶ 7; *see also Olivas-Soto*

*v. Indus. Claim Appeals Office*, 143 P.3d 1178, 1180 (Colo. App.

2006). Still, "the Panel's interpretation will be set aside only if it is

inconsistent with the clear language of the statute or with the

legislative intent." *Support, Inc. v. Indus. Claim Appeals Office*, 968

P.2d 174, 175 (Colo. App. 1998).

### 2. The Panel Properly Interpreted Section 8-42-112.5

¶ 33      Section 8-42-112.5 penalizes workers who are injured while

intoxicated by reducing their benefits by 50% if certain conditions

are met. As relevant, the statute provides as follows:

> (1) Nonmedical benefits otherwise payable to
> an injured worker are reduced fifty percent
> where the injury results from the presence in
> the worker's system, during working hours, of
> . . . a blood alcohol level at or above 0.10
> percent, or at or above an applicable lower
> level as set forth by federal statute or
> regulation, as evidenced by a forensic drug or
> alcohol test conducted by a medical facility or
> laboratory licensed or certified to conduct such
> tests. A duplicate sample from any test
> conducted must be preserved and made
> available to the worker for purposes of a
> second test to be conducted at the worker's
> expense. If the test indicates the presence of
> such substances or of alcohol at such level, it
> is presumed that the employee was intoxicated

19

and that the injury was due to the intoxication. This presumption may be overcome by clear and convincing evidence.

§ 8-42-112.5(1).

¶ 34 The PALJ interpreted the statute to require the preservation of a second sample to admit information about decedent's BAC for the purpose of reducing benefits under the statute. The ALJ disagreed, as her ruling from the bench reflects:

> I disagree with [the PALJ] and find that the presence of a second sample is only required if the respondents are relying on [a] presumption of intoxication. And that in that event, a second test must be made available to the claimant's side, and then they're able to rebut the presumption by clear and convincing evidence.
>
> I don't find that proof of intoxication is governed generally by this statute, rather a party can prove intoxication by a preponderance of the evidence as they could prove any other issue in any other claim, and that the second sample is required only if respondents try to avail themselves of a presumption of intoxication at a blood alcohol content level of .10 percent.
>
> So I find the general rule of proving intoxication is the larger rule, and that this statute, 8-42-112.5, carves out an exception when the responding parties are trying to rely upon the presumption of intoxication. So I will

20

> reverse and strike that portion of [the PALJ's] order.

¶ 35 SkyWest argues that the ALJ's interpretation is correct but admits that neither the supreme court nor any division of this court has addressed this question. Indeed, we know of no appellate case which has examined the ramifications of failing to preserve a second blood sample in a workers' compensation case. The Panel, however, has addressed this issue on more than one occasion.

¶ 36 In *Stohl v. Blue Mountain Ranch Boys Camp*, W.C. No. 4-516-764, 2005 WL 481322 (Colo. I.C.A.O. Feb. 25, 2005), for example, the Panel explained that the legislature enacted the second sample requirement

> as a procedural protection against the possible reduction of benefits from a false positive result in the first blood sample testing. The General Assembly determined that given the magnitude of the evidentiary presumption created by an initial test result showing 0.10 or greater blood alcohol level, the availability of a second sample for the claimant to independently test is a necessary safeguard to the wrongful loss of benefits. (*See* Respondents' Brief in Support of the Petition to Review, Exhibit C, House Committee on Business Affairs & Labor Transcript on Senate Bill 99-161, pp. 2, 4, 21, 29). Therefore, the General Assembly *conditioned application of the penalty statute on the availability of a*

21

> *second sample* for use by the claimant to
> contest the accuracy of the initial test.

*Id.* at *2 (emphasis added). As a result, the "preservation of a second sample is a condition precedent to the evidentiary presumption created by a 0.10 blood alcohol test from the first sample which in turn is required to assert a penalty under § 8-42-112.5." *Id.*

¶ 37 Consistent with this pronouncement, in cases in which a second sample was not available, the Panel has refused to reduce benefits under the statute. *See, e.g., Ray v. New World Van Lines*, W. C. No. 4-520-251, 2004 WL 2348543, at *7 (Colo. I.C.A.O. Oct. 12, 2004). The Panel's interpretation is consistent with the legislative intent reflected in the plain language of the statute. *See Sanco Indus.*, 147 P.3d at 8; *Support, Inc.*, 968 P.2d at 175.

¶ 38 When certain conditions are met, section 8-42-112.5 creates a presumption that a worker's injury resulted from his intoxication. The consequence of the presumption is that the injured worker's benefits are reduced by 50%. The presumption may only be overcome by clear and convincing evidence to the contrary. However, the presumption and the consequential reduction in

22

benefits apply only where (1) "the injury results from the presence in the worker's system, during working hours, of . . . a blood alcohol level at or above 0.10 percent"; (2) the impermissible blood alcohol level is "evidenced by a forensic drug or alcohol test conducted by a medical facility or laboratory licensed or certified to conduct such tests"; *and* (3) "[a] duplicate sample from any test conducted [is] preserved and made available to the worker for purposes of a second test to be conducted at the worker's expense." § 8-42-112.5(1). When all these conditions are met and "the test indicates the presence of . . . alcohol at such level, it is presumed that the employee was intoxicated and that the injury was due to the intoxication." *Id.*

¶ 39    The legislature declared that a second sample "must be preserved and made available to the worker for purposes of a second test." *Id.* SkyWest suggests that this sentence modifies only the *next* two sentences which impose a presumption of intoxication if "the test indicates" a blood alcohol level at or above 0.10 percent. In other words, SkyWest argues that the absence of a second sample may prohibit it from relying on a *presumption* that decedent was intoxicated, but it does not prevent it from otherwise proving

23

that decedent's injury resulted from his intoxication such that his benefits must be reduced by 50%. SkyWest's argument is flawed for two reasons.

¶ 40 First, we reject SkyWest's contention that the second sample requirement affects only the sentences that follow it in the statutory subsection. On the contrary, the context establishes that the legislature intended the second sample prerequisite to apply to the entire statute. *See Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010) ("The language at issue must be read in the context of the statute as a whole and the context of the entire statutory scheme.").

¶ 41 The first sentence of the statute authorizes a reduction in benefits only when a "test conducted by a medical facility or laboratory licensed or certified to conduct such tests" reflects a blood alcohol level at or above 0.10 percent. § 8-42-112.5(1). The very next sentence mandates that "[a] duplicate sample from *any test conducted* must be preserved and made available to the worker for purposes of a second test to be conducted at the worker's expense." *Id.* (emphasis added). Thus, the plain language makes clear that the duplicate sample "from any test conducted" refers to

24

the "test conducted by a medical facility or laboratory," which is required by the first sentence to invoke the penalty in the first instance. *See id.* The last two sentences of the subsection do not refer to the second sample; rather, they refer to "the test" and the presumption that flows from a test result showing an impermissible level of alcohol in the worker's system. Indeed, the statute does not require that a second test be conducted on the second sample, or that two separate test results be admitted, to invoke the intoxication penalty.

¶ 42    Second, and more importantly, the presumption and the penalty cannot be separated. When all conditions are met, the statute creates a presumption that the worker's injury resulted from his intoxication and that his benefits must be reduced by 50%. The worker can overcome that presumption by clear and convincing evidence that something other than his intoxication caused the injury. But the statute does not contemplate any other means for an employer to secure a 50% reduction in benefits because of a worker's intoxication other than through the articulated presumption (which requires proof of an impermissible level of alcohol evidenced by a blood alcohol test conducted by a qualified

25

medical facility or laboratory, which in turn requires a second sample be preserved to ensure the test result is accurate). In other words, the statute does not authorize a 50% reduction in benefits if the employer is able to prove, by some means other than the presumption, that the worker's injury resulted from his intoxication.

¶ 43 The Panel's interpretation is entitled to deference. The Panel considered the mandate for a second sample an independent prerequisite to be satisfied before toxicology results could be admitted to justify a 50% penalty against claimants' benefits. Because this interpretation is consistent with the statutory language, we decline to set it aside. *See Sanco Indus.*, 147 P.3d at 8; *Support, Inc.*, 968 P.2d at 175.

¶ 44 We agree with the Panel that because a second sample was not preserved, decedent's toxicology results could not be admitted for the purpose of imposing a 50% reduction in claimants' benefits under section 8-42-112.5.

## IV. Conclusion

¶ 45 The Panel's order is affirmed.

JUDGE FOX and JUDGE ROTHENBERG concur.

26